[No. B184186. Second Dist., Div. Seven. Nov. 14, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
OMAR DAVID MESA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of sections 1 and 2 of the Discussion in the majority opinion.

COUNSEL

Jennifer L. Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz and Lauren E. Dana, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PERLUSS, P. J.**—Omar David Mesa appeals from the judgment entered following his conviction by a jury for grand theft of personal property with a special finding, based on his admission to the court in a bifurcated proceeding, he had suffered one prior serious or violent felony conviction within the meaning of the "Three Strikes" law. Mesa contends the evidence is insufficient to support his conviction for grand theft, the prosecutor impermissibly commented during closing argument on his decision not to testify and his counsel's failure to object to the prosecutor's improper argument constituted ineffective assistance of counsel. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Summary of the Evidence Presented at Trial*

Approximately 2:00 p.m. on July 29, 2004, Armando Aleman left his truck in the parking lot of the Bank of America branch in Huntington Park, walked inside the bank and was given access by a bank employee to a locked, specialized area of the branch reserved for merchants with accounts at the bank. When he initially entered the merchant area, there were no other customers there. Aleman, a regular customer of the branch, withdrew $5,000 in cash and obtained a cashier's check for $7,500. He was assisted with his transactions by branch teller Victor Ruiz.

While Ruiz was helping Aleman, Sergio Cuevas returned from lunch and opened the second teller station in the merchant area, which was six or seven feet from Ruiz's window. After assisting one customer, Cuevas asked to help the next customer. Mesa, who had been sitting down in the merchant area, stood and walked to Cuevas's window, where he handed Cuevas a $100 bill and said he wanted $5 bills—a routine retail banking transaction not normally

performed in the merchant area. Ruiz noticed Mesa repeatedly looking over at Aleman while Mesa stood at Cuevas's window.

It took no more than two minutes for Cuevas to change Mesa's $100 bill for him. After receiving the smaller bills, Mesa walked to the door of the merchant area, opened it, but then turned around, went back inside and sat in the same chair he had previously used. At this point Mesa was using his cellular telephone, holding it between his neck and his shoulder, and counting or shuffling the bills he had received. However, according to Cuevas, at the same time Mesa was also looking up and in the direction of Aleman and Ruiz, something Cuevas found strange. Mesa left the merchant area a minute or two before Aleman.

Neither Cuevas nor Ruiz had seen Mesa at the branch before. Cuevas was troubled by Mesa's behavior (and, in particular, by the fact he had been watching Aleman, who was withdrawing a large sum of money) and spoke to Ruiz about it immediately after Mesa and Aleman left the branch. Ruiz was also concerned something might happen to Aleman outside the bank and notified his supervisor after both customers were outside.

After completing his transaction, Aleman put the money and check in a vinyl pouch with the bank's logo on it, placed the pouch inside a white plastic bag and, after returning to his truck, set the bag inside the truck's center console. Aleman then drove from the bank's parking lot to the drive-through lane of the fast-food restaurant located next door. As he drove, Aleman heard a sound that suggested he had a flat tire. After receiving his meal, Aleman stopped his truck on the street next to the bank's parking lot and discovered his right rear tire had been slashed. Approximately three minutes elapsed while Aleman was outside the truck examining the tires. When he reentered the truck, Aleman noticed the center console was open and the money and check were missing. Aleman had left both the truck and the center console unlocked.

Mesa's thumbprint was found on Aleman's truck on the exterior of the driver's side door handle.

Defense witness Johanna Trujillo testified she and Mesa were job hunting in Huntington Park on the day of the crime and she gave Mesa a $100 bill to change at the Bank of America branch before they went to lunch because fast-food restaurants do not accept large bills. According to Trujillo, she illegally parked her car near the bank's front entrance, not in the parking lot where Aleman's truck was located. Mesa went from Trujillo's car to the

bank, was inside the branch for approximately 20 minutes and then returned directly to her car.

Mesa did not testify on his own behalf.

### 2. *The Jury's Verdict and Sentencing*

The jury found Mesa guilty of one count of grand theft. (Pen. Code, § 487a.) In a bifurcated proceeding Mesa admitted he had suffered a prior serious or violent felony conviction (for attempted murder) that constituted a strike within the meaning of the Three Strikes law. (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).) Mesa's motion for a new trial was denied, and he was sentenced to an aggregate state prison term of four years (the middle term of two years doubled pursuant to the Three Strikes law).

## DISCUSSION

1., 2.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 3. *Mesa Has Forfeited His Argument the People Improperly Commented on His Election Not to Testify; Failure to Object During Trial Was Not Prejudicial Ineffective Assistance of Counsel*

#### a. *The prosecutor's closing argument*

Anticipating the likely defense that Mesa's thumbprint on the door handle of Aleman's truck, by itself, was insufficient evidence to convict him of stealing the money and cashier's check, the prosecutor told the jury in closing argument, "If we want to accept the principle that you can't convict someone with their fingerprints on a car, then Officer Rendon was wasting his time. The police department is wasting their time providing these police officer[s] with fingerprint kits. . . . That's going to be an argument. But, ladies and gentlemen, analyze that argument. We do believe in that. We do believe that it means something, because we want an explanation for why his fingerprint is on the car that the money was stolen out of at the time of the incident. And unless we have that, unless we have an explanation, then you'll know he is guilty, because he has no explanation for why he was acting suspiciously in the bank. He has no explanation for why his fingerprint is on the car, and he

---

[*]See footnote, *ante*, page 1000.

has no explanation why Ms. Trujillo has come up with this story that just doesn't ring true."

Asserting this portion of the prosecutor's closing argument does more than merely describe the state of the evidence, Mesa contends that, by emphasizing *he* had not explained why his thumbprint was on Aleman's truck or why he was acting suspiciously in the bank, the prosecutor improperly commented on his election not to testify in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. (See *Griffin v. California* (1965) 380 U.S. 609, 615 [14 L.Ed.2d 106, 85 S.Ct. 1229] *(Griffin)* [neither the People nor the trial court may convert defendant's decision not to testify into evidence of defendant's guilt; to do so impermissibly burdens defendant's invocation of his or her Fifth Amendment rights]; *People v. Medina* (1974) 41 Cal.App.3d 438, 457 [116 Cal.Rptr. 133] [finding *Griffin* error when prosecutor's comments had effect of "urg[ing] the jury to believe the testimony of the three accomplice witnesses because the defendants, who were the only ones who could have refuted it, did not take the stand and subject themselves to cross-examination and to prosecution for perjury"].)[2]

> b. *Mesa failed to object to the prosecutor's comments and to request a curative admonition and has thereby forfeited any claim of* Griffin *error*

Mesa's trial counsel did not object to the prosecutor's comments as *Griffin* error (or on any other grounds) and did not request the court admonish the jury Mesa had a right not to testify and the jury could not consider his assertion of that right as evidence of his guilt. That failure forfeits his claim of prosecutorial misconduct on appeal. (*People v. Turner* (2004) 34 Cal.4th 406, 421 [20 Cal.Rptr.3d 182, 99 P.3d 505] [defendant's failure to object to alleged *Griffin* error forfeited claim on appeal].)

A defendant cannot complain on appeal of error by a prosecutor unless he or she made an assignment of error on the same ground in a timely fashion in the trial court and requested the jury be admonished to disregard

---

[2] "It has long been established that 'although *Griffin* prohibits reference to a defendant's failure to take the stand in his own defense, that rule "does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses." ' [Citations.] Thus, '[a]s a general principle, prosecutors may allude to the defense's failure to present exculpatory evidence' [citation], and such commentary does not ordinarily violate *Griffin* or erroneously imply that the defendant bears a burden of proof [citations]." (*People v. Lewis* (2004) 117 Cal.App.4th 246, 257 [12 Cal.Rptr.3d 1].)

the impropriety. (*People v. Jones* (2003) 29 Cal.4th 1229, 1262 [131 Cal.Rptr.2d 468, 64 P.3d 762]; *People v. Box* (2000) 23 Cal.4th 1153, 1207 [99 Cal.Rptr.2d 69, 5 P.3d 130]; *People v. Green* (1980) 27 Cal.3d 1, 27–36 [164 Cal.Rptr. 1, 609 P.2d 468].) This procedural requirement has been applied repeatedly to cases involving claims of *Griffin* error. (E.g., *People v. Turner, supra,* 34 Cal.4th at p. 421; *People v. Medina* (1995) 11 Cal.4th 694, 756 [47 Cal.Rptr.2d 165, 906 P.2d 2]; *People v. Mincey* (1992) 2 Cal.4th 408, 446 [6 Cal.Rptr.2d 822, 827 P.2d 388].) The only exception is for cases in which a timely objection would have been futile or ineffective to cure the harm. (*Green,* at p. 34 ["[T]he initial question to be decided in all cases in which a defendant complains of prosecutorial misconduct for the first time on appeal is whether a timely objection and admonition would have cured the harm. If it would, the contention must be rejected."].) Nothing in the record suggests an objection by Mesa's counsel would not have been sustained and followed immediately by an admonition to the jury to disregard the argument or that these remedies would not have cured any prejudice. Accordingly, a timely objection was required.

> c. *Mesa was not prejudiced by his counsel's failure to object to the prosecutor's comments*

■ Recognizing the forfeiture problem, as an alternative to his claim of prosecutorial misconduct, Mesa urges us to hold his counsel's failure to object to the prosecutor's comments as *Griffin* error constituted ineffective assistance of counsel. To prevail on this claim, Mesa must establish his counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 686–687 [80 L.Ed.2d 674, 104 S.Ct. 2052] (*Strickland*); *People v. Williams* (1997) 16 Cal.4th 153, 215 [66 Cal.Rptr.2d 123, 940 P.2d 710].)

■ " 'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof . . . must be a demonstrable reality and not a speculative matter.' [Citation.]" (*People v. Karis* (1988) 46 Cal.3d 612, 656 [250 Cal.Rptr. 659, 758 P.2d 1189].) There is a presumption the challenged action " 'might be considered sound trial strategy' " under the circumstances. (*Strickland, supra,* 466 U.S. at pp. 689, 694; accord, *People v. Dennis* (1998) 17 Cal.4th 468, 541 [71 Cal.Rptr.2d 680, 950 P.2d 1035].) On a direct appeal a conviction will be reversed for ineffective assistance of counsel only when the record demonstrates there could have been no rational tactical purpose for counsel's challenged act or omission.

(*People v. Lucas* (1995) 12 Cal.4th 415, 442 [48 Cal.Rptr.2d 525, 907 P.2d 373] ["Reviewing courts reverse convictions on direct appeal on the ground of incompetence of counsel only if the record on appeal demonstrates there could be no rational tactical purpose for counsel's omissions."]; *People v. Mitcham* (1992) 1 Cal.4th 1027, 1058 [5 Cal.Rptr.2d 230, 824 P.2d 1277] [" 'If the record sheds no light on why counsel acted or failed to act in the manner challenged, "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," [citation], the contention [that counsel provided ineffective assistance] must be rejected.' "].)

### i. *The* Strickland *"reasonable probability" standard*

In considering a claim of ineffective assistance of counsel, it is not necessary to determine " 'whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' " (*In re Fields* (1990) 51 Cal.3d 1063, 1079 [275 Cal.Rptr. 384, 800 P.2d 862], quoting *Strickland, supra,* 466 U.S. at p. 697.) It is not sufficient to show the alleged errors may have had some conceivable effect on the trial's outcome; the defendant must demonstrate a "reasonable probability" that absent the errors the result would have been different. (*People v. Williams, supra,* 16 Cal.4th at p. 215; see *People v. Ledesma* (1987) 43 Cal.3d 171, 217–218 [233 Cal.Rptr. 404, 729 P.2d 839].)

■ To be sure, had Mesa not forfeited his direct claim of *Griffin* error, we would review whether any such error was harmless under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824] (*Chapman*), which requires the People, in order to avoid reversal of the judgment, to prove beyond a reasonable doubt the error did not contribute to the verdict obtained. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 994 [108 Cal.Rptr.2d 291, 25 P.3d 519] [prejudicial effect of violations of defendant's Fifth Amendment rights must be evaluated under *Chapman* standard]; *People v. Quartermain* (1997) 16 Cal.4th 600, 621 [66 Cal.Rptr.2d 609, 941 P.2d 788] ["Under this test, the appropriate inquiry is 'not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.' [Citation.]"].) However, the *Strickland* "reasonable probability" standard applies to the evaluation of a Sixth Amendment claim of ineffective assistance of counsel, even when defense counsel's alleged error involves the failure to preserve the defendant's

federal constitutional rights. (E.g., *People v. Ledesma, supra,* 43 Cal.3d at pp. 208–209, 217 [applying *Strickland*'s "reasonable probability" test for prejudice to defense counsel's alleged deficiencies, including failure to protect defendant's Fourth Amendment rights by filing suppression motion directed to telephone call intercepted by police after warrantless entry of defendant's residence]; *In re Avena* (1996) 12 Cal.4th 694, 721–722, 731 [49 Cal.Rptr.2d 413, 909 P.2d 1017] [applying *Strickland* standard to counsel's failure to object to defense counsel's waiver of defendant's right not to appear before jury in jail clothes]; see *People v. Gonzalez* (1998) 64 Cal.App.4th 432, 437 [75 Cal.Rptr.2d 272] (opn. of Johnson, J.).)

As the United States Supreme Court explained in *Kimmelman v. Morrison* (1986) 477 U.S. 365 [91 L.Ed.2d 305, 106 S.Ct. 2574] (*Kimmelman*), the use of a different standard of prejudice for a claim of ineffective assistance of counsel is the product of the significant difference between Fourth (or Fifth) Amendment claims, on the one hand, and a defendant's Sixth Amendment claim that he or she has been deprived of the effective assistance of counsel, on the other hand: "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. . . . Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. Thus, while respondent's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values." (477 U.S. at pp. 374–375; see also *id.* at p. 382 ["*Strickland*'s standard, although by no means insurmountable, is highly demanding. More importantly, it differs significantly from the elements of proof applicable to a straightforward Fourth Amendment claim. Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence."].)[3]

---

[3] The California Supreme Court similarly addressed the seeming anomaly in using the *Strickland* "reasonable probability" standard to evaluate ineffective assistance claims involving forfeiture of federal constitutional rights subject to the *Chapman* standard of prejudice on direct review: "[*Strickland*] was not concerned with establishing a test of prejudicial error, but with defining incompetency of counsel. It concluded that to prove incompetency, '[t]he

The issue before the court in *Kimmelman* was whether the rule precluding federal habeas corpus review of Fourth Amendment claims applied equally to Sixth Amendment claims of ineffective assistance when defense counsel's alleged error was the failure to file a potentially meritorious suppression motion challenging evidence allegedly seized in violation of the defendant's Fourth Amendment rights. The Supreme Court held it did not. Addressing the state's contention that authorizing federal habeas corpus relief in these circumstances would undermine the rule precluding state court defendants from litigating their Fourth Amendment claims in postconviction proceedings in federal court by permitting defense counsel to "consciously default or poorly litigate their clients' Fourth Amendment claims in state court in the hope of gaining more favorable review of these claims in Sixth Amendment federal habeas proceedings" (*Kimmelman, supra*, 477 U.S. at p. 382, fn. 7), the Supreme Court expressly rejected the position suggested by Justice Johnson in his concurring opinion: "[W]hen an attorney chooses to default a Fourth Amendment claim, he also loses the opportunity to obtain direct review under the harmless-error standard of *Chapman v. California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] (1967), which requires the State to prove that the defendant was not prejudiced by the error. By defaulting, counsel shifts the burden to the defendant to prove that there exists a reasonable probability that, absent his attorney's incompetence, he would not have been convicted." (*Kimmelman*, at p. 382, fn. 7; see *People v. Howard* (1987) 190 Cal.App.3d 41, 46–47 [235 Cal.Rptr. 223] [discussing *Kimmelman* and applying *Strickland* standard, rather than *Chapman* test, to reject ineffective assistance claim notwithstanding prima facie case of unprofessional errors by defense counsel in failing to seek to exclude improperly seized evidence].)

ii. *Mesa has failed to demonstrate prejudice*

Even if the prosecutor's argument constituted *Griffin* error and Mesa's counsel had no valid tactical reason for failing to object and request an admonition,[4] Mesa's ineffective assistance of counsel claim must be rejected because he has failed to demonstrate a reasonable probability the outcome of his trial would have been different absent that error. The trial court instructed

---

defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.] (We use an identical test for assessing incompetency of counsel. [Citation.])" (*People v. Lucero* (1988) 44 Cal.3d 1006, 1032, fn. 16 [245 Cal.Rptr. 185, 750 P.2d 1342].)

[4] Although we need not decide the point, Mesa's counsel may well have been concerned that an objection for *Griffin* error, even if sustained with an appropriate admonition, would have simply shifted the focus from Mesa's failure to explain the presence of his thumbprint on the door handle of Aleman's truck or his suspicious behavior in the bank to the lack of any reasonable, innocent explanation for the People's incriminating evidence.

the jury pursuant to CALJIC No. 2.60 that a defendant has a constitutional right not to testify and it must not draw any inference from the fact a defendant does not testify or permit the matter to enter into its deliberations, as well as CALJIC No. 2.61 that, in deciding whether to testify, the defendant may rely on the state of the evidence and the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the crime charged. Additionally, the jury was instructed statements by the prosecutor are not evidence (CALJIC No. 1.02) and the verdict must be based on evidence actually received at trial and not from any other source (CALJIC No. 1.03).

■ Had the trial court sustained an objection to the prosecutor's comments as *Griffin* error, it would have properly admonished the jury in similar terms, making it plain—as did CALJIC Nos. 2.60 and 2.61—both that Mesa's silence could not substitute for the requirement the People prove his guilt beyond a reasonable doubt and that Mesa's silence could not be used as evidence of guilt. Repeating those instructions may have had some marginal benefit to the defense. However, a review of the evidence of Mesa's guilt, as well as the prosecutor's entire closing argument to the jury and the limited extent of the alleged *Griffin* error itself, which did not involve any direct comment on the defendant's failure to testify, let alone (as occurred in *Griffin*) the actual suggestion the jury could consider the defendant's failure to testify in assessing his guilt (see *People v. Vargas* (1973) 9 Cal.3d 470, 478 [108 Cal.Rptr. 15, 509 P.2d 959] [context of comments and their direct or indirect nature significant factors in assessing prejudice]), leaves us convinced his counsel's failure to object to the prosecutor's comments did not adversely affect the outcome of his trial. (*People v. Waidla* (2000) 22 Cal.4th 690, 719 [94 Cal.Rptr.2d 396, 996 P.2d 46].)

In sum, on this record Mesa has failed to carry his burden to demonstrate prejudice as a result of the ineffective assistance of his counsel.

## DISPOSITION

The judgment is affirmed.

Woods, J., concurred.

**JOHNSON, J.,** Concurring.—While I initially planned to dissent in this case, my colleagues' opinion persuaded me the prevailing standard of review for claims involving ineffective assistance of counsel requires a "reasonable

probability" of a different outcome, even when that ineffective assistance results in the deprivation of defendant's federal constitutional rights. (Maj. opn., *ante*, at pp. 1008–1010.) I write separately, nonetheless, to register my concern this approach is not sufficiently protective of vital constitutional rights, such as a defendant's Fifth Amendment right not to testify. In my view, when a lawyer's ineffective assistance costs a defendant such a right only application of the *Chapman* standard[1] will afford the essential protection. That is, when, as here, a defense counsel's failure to object deprives a defendant not just of his constitutional right to effective representation but to another constitutional right guaranteed by the United States Constitution, the conviction should be reversed unless the court can make a finding "beyond a reasonable doubt" the error did not affect the outcome.[2]

The threshold issue, in my view, is what would have happened if that objection had been made instead of omitted. If the answer is there is a *reasonable doubt* whether the outcome would have remained the same because the enforcement of the constitutional right would have made that degree of difference, then the logic behind *Chapman* suggests the conviction should be reversed. It seems contrary to the principle that federal constitutional rights warrant the higher standard of protection afforded by *Chapman* to do otherwise. It undermines enforcement of the federal constitutional right to say, no, despite the fact there is a "reasonable doubt" the conviction would have happened if the objection had been made we refuse to reverse because the defendant has failed to establish a "reasonable probability" a different outcome would have resulted had the objection been made.

On the other hand, under this more protective standard the converse would be true, too. If the appellate court applies *Chapman* and finds beyond a reasonable doubt an objection, if made, would *not* have made a difference, it necessarily follows the defense counsel's failure to object to that constitutional error did not represent ineffective assistance of counsel—for the simple reason the lawyer's mistake could not have affected the outcome.

It is revealing to note a recent death penalty case, *People v. Huggins*,[3] in which the California Supreme Court did exactly what the above paragraph argues would be a preferable approach. Our high court engaged in this two-step process—first applying *Chapman* when determining whether a defense counsel's objection to constitutionally inadmissible evidence, *had it*

---

[1] *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].

[2] *Chapman v. California, supra*, 386 U.S. at page 24.

[3] *People v. Huggins* (2006) 38 Cal.4th 175 [41 Cal.Rptr.3d 593, 131 P.3d 995].

*been made*, would have affected the outcome. Then having found beyond a reasonable doubt the evidence whether admitted or excluded could not have affected the outcome, our high court applied *Strickland* to find the lawyer's mistake therefore was not prejudicial and did not constitute ineffective assistance of counsel.

In *Huggins*, the constitutional right at stake was the defendant's constitutional right to exclude statements he made during a psychiatric competency examination. His counsel failed to raise the constitutional ground (although he raised other grounds) when objecting to the use of a certain statement from the appellant's competency interview during the prosecution's cross-examination of the psychiatrist. The trial court rejected the other grounds the defense counsel asserted in support of his objection and permitted the prosecutor to bring out the content of the appellant's statement.[4]

As the majority does in this case, rather than determine whether the defense counsel was deficient in failing to register a constitutional ground for his objection, the Supreme Court in *Huggins* moved directly to the prejudice prong. After briefly rehearsing why the erroneously admitted statement was inconsequential compared to the other evidence relevant to the issue at hand, the court applied the *Chapman* standard to the defense counsel's failure to properly object. "If defendant *had preserved his Sixth Amendment claim* for review [by lodging the objection on constitutional grounds], we would conclude that *any error in admitting the evidence was harmless beyond a reasonable doubt* under *Chapman v. California, supra*, 386 U.S. 18, 24 (*Satterwhite v. Texas* [(1988)] 486 U.S. 249, 256, 258 [100 L.Ed.2d 284, 108 S.Ct. 1792] [applying the *Chapman* standard]; [citation]), and reversal of the judgment would not be required. Because we find no reasonable probability of a different outcome [because no reversal would be required by *Chapman*] absent the admission of the evidence, we conclude that there was no ineffective assistance of counsel."[5]

What we do not know from *Huggins*, however, is what our Supreme Court would have done had it found a reasonable doubt whether the outcome would have been the same if the defense counsel indeed had lodged a proper objection to the constitutionally inadmissible evidence. Except for some of the prior opinions from both the California and United States Supreme Courts

---

[4] *People v. Huggins, supra*, 38 Cal.4th at pages 247–248.
[5] *People v. Huggins, supra*, 38 Cal.4th at page 249, italics added.

cited in the majority opinion,[6] it would seem doubtful our high court in such an instance would have then gone on to hold "nevertheless there was no ineffective assistance of counsel" in the lawyer's failure to lodge the objection. In my view, the two are linked inextricably. If the constitutional error the defense counsel's failure to object allowed to occur led to consequences that raised a reasonable doubt about the trial's outcome then that mistake ought to satisfy the prejudice prong, at least, of the standard for ineffective assistance of counsel.

I would like to think the fact the California Supreme Court followed the two-step process it did in reasoning through the "failure to object to federal constitutional error" issue in *Huggins* suggests it also would do so when the first step results in a finding of reasonable doubt whether the objection, if made, would have led to a different result. And furthermore, I would hope the latter finding would lead to the opposite conclusion in the second stage of the reasoning process than the one reached in *Huggins*. That is, because the defense counsel's error allowed a federal constitutional error that, in turn, raised a reasonable doubt about the outcome, it cannot be said the error was not prejudicial and thus reversal is required. To put it another way, this is not solely or even primarily a Sixth Amendment "ineffective assistance of counsel" violation to be tested under the standard of review applicable to that constitutional provision. No, in this case it is a Fifth Amendment violation combined with a Sixth Amendment violation—and more the former than the latter. As such the error should have to pass muster under both standards, not just the easier one, before being deemed harmless.

Unfortunately, there is little hope other than the California Supreme Court's reasoning process in the *Huggins* opinion to suggest it will adopt the above analysis when the defense counsel's failure to object to federal constitutional error raises a "reasonable doubt" about the trial's outcome but not a "reasonable probability" of a different outcome. As well documented in the majority opinion the *Strickland* "reasonable probability of a different

---

[6] See, e.g., California Supreme Court decisions in *People v. Ledesma* (1987) 43 Cal.3d 171, 208–209, 217 [233 Cal.Rptr. 404, 729 P.2d 839], *People v. Lucero* (1988) 44 Cal.3d 1006, 1032, footnote 16 [245 Cal.Rptr. 185, 750 P.2d 1342], and *In re Avena* (1996) 12 Cal.4th 694, 721–722, 731 [49 Cal.Rptr.2d 413, 909 P.2d 1017]. Also, see United States Supreme Court decision in *Kimmelman v. Morrison* (1986) 477 U.S. 365, 382, footnote 7 [91 L.Ed.2d 305, 106 S.Ct. 2574].

outcome" language[7] has evolved into a veritable mantra whenever courts confront a claim of ineffective assistance of counsel. Moreover, the mantra is repeated and that standard of review applied even in the relatively rare situation when the defense counsel's error deprived a defendant of a federal constitutional right.[8] Accordingly, I reluctantly concur in the judgment, but respectfully ask some higher court to revisit the standard of review applicable when a counsel's serious miscue wipes out a defendant's fundamental constitutional rights.

A petition for a rehearing was denied November 28, 2006, and appellant's petition for review by the Supreme Court was denied February 21, 2007, S148991.

---

[7] *Strickland v. Washington* (1984) 466 U.S. 668, 686–687 [80 L.Ed.2d 674, 104 S.Ct. 2052].
[8] See, e.g., cases cited in footnote 6 above.