Filed 6/17/14  P. v. Garritson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063942 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN313930) |
| MICHAEL DALE GARRITSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed as modified.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Sean M. Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

Michael Dale Garritson appeals the order suspending imposition of sentence and granting him probation after a jury found him guilty of two counts of felony dependent adult abuse and four counts of misdemeanor dependent adult abuse. Garritson contends: (1) the evidence was insufficient to support the felony convictions; (2) the trial court failed to give a required unanimity instruction as to one of the felony convictions; (3) the felony convictions must be reversed because trial counsel provided ineffective assistance by failing to object to the prosecutor's misconduct during closing argument; and (4) he was improperly convicted of a count based on a continuous course of conduct and also of separate counts based on discrete acts that were parts of the course of conduct. We reject the first three contentions but agree with the fourth, vacate the continuous course of conduct conviction and associated monetary assessments imposed for that conviction, and affirm the order as modified.

I.

FACTUAL BACKGROUND

Garritson was one of several individuals hired to care for James Oakley from July 23 to August 22, 2012, while Oakley's mother was in Hungary visiting her daughter. Oakley, who was 23 years old at the time, suffers from severe autism, epilepsy, and self-injurious behavior. Oakley is also a carrier of methicillin-resistant *Staphylococcus aureus* (MRSA), a bacterium that can cause a life-threatening infection from a slight break in the skin. Oakley has the cognitive ability of a child of age eight months to three years and the motor skills of a child of age one to three years. He has never spoken, but he smiles and laughs when happy, grimaces when in pain, and cries when in distress.

2

When Oakley becomes upset or uncomfortable (such as by hearing a loud noise or being hungry or in pain), he punches himself in the temples or on the chin, or elbows himself in the ribs. He does not, however, become aggressive toward others. Oakley requires constant supervision to provide basic nutrition and hydration, to monitor his seizures, and to prevent self-injurious behavior.

Before Oakley's mother departed for Hungary, she installed a motion-activated video and audio surveillance device in Oakley's bedroom. During shifts when Garritson was monitoring Oakley, the device recorded several instances of Oakley wandering around his bedroom or engaging in self-injurious behavior and Garritson's responses thereto, as follows:

—July 31: Garritson poked Oakley's eyes multiple times.

—August 7: Garritson poked Oakley's eyes multiple times, shoved him, and put body weight on him.

—August 8: Garritson pulled Oakley to the floor by his hair, kicked him, bent his arm over the headboard of the bed, and twisted his arm twice.

—August 14: Garritson poked Oakley's eyes.

—August 16: Garritson poked Oakley's eyes multiple times and bent his arm over the headboard of the bed.

—August 17: Garritson shoved Oakley onto the bed, bent his arm over the headboard of the bed, and choked him.

The audio portion of the surveillance also recorded Garritson repeatedly telling Oakley "no," and Oakley moaning or crying in response to Garritson's actions.

3

Scott Modell, Ph.D., reviewed the surveillance of Garritson's interactions with Oakley and testified as an expert witness on the treatment of autism. Dr. Modell concluded: poking Oakley's eyes was "not appropriate" and "would result in pain"; "it's never appropriate to yank somebody by the hair" because it "can cause neck trauma" and is "painful, unnecessarily so"; bending Oakley's arm over the headboard of his bed was not appropriate and would have been "extremely painful"; and twisting Oakley's arm was "painful" and "not appropriate." According to Dr. Modell, "The risk of injury in some of the things that [he had] seen in the videos [was] great."

Cheryl Boyd, M.D., Oakley's treating physician, also reviewed the surveillance of Garritson's interactions with Oakley. Dr. Boyd was so concerned by the violence she observed that she ordered radiographs to see whether Oakley sustained any skeletal injury. Dr. Boyd testified that "poking, punching, slapping, pulling, any of those things are not part of redirective behavior" for a patient engaging in self-injurious behavior, because such acts could "potentially injure [the] patient." She further testified Oakley appeared to be in pain in the videos she watched, and she had "concerns that [Garritson] was placing [Oakley] at risk for bodily injury." More specifically, Dr. Boyd explained that poking Oakley in the eye could scratch the cornea, injure the skin around the eye, or cause inflammation of the eye; pulling Oakley's hair and forcing him to the floor could strain or fracture his neck; and twisting and bending Oakley's arm could sprain his wrist or elbow, or dislocate his shoulder.

4

II.

PROCEDURAL BACKGROUND

The People charged Garritson with seven counts of felony dependent adult abuse based on Garritson's willful infliction of physical pain and mental suffering on Oakley "under circumstances or conditions likely to produce great bodily harm or death." (Pen. Code, § 368, subd. (b)(1); subsequent undesignated section references are to this code.) Count 1 covered the entire course of abusive conduct between July 28, 2012, and August 22, 2012, and was not based on any specific act by Garritson. Counts 2, 3, and 7 were based on Garritson's poking Oakley in the eye on July 31, August 7, and August 14, 2012, respectively. Counts 4, 5, and 6 were based on acts by Garritson on August 8, 2012, namely, grabbing Oakley by the hair and pulling him to the floor, pulling Oakley's arm over the headboard of his bed and bending it down, and grabbing Oakley's arm and twisting it twice.

The jury found Garritson guilty of felony dependent adult abuse on counts 1 and 4; guilty of the lesser included offense of misdemeanor dependent adult abuse (§ 368, subd. (c))[1] on counts 2, 3, 5, and 6; and not guilty on count 7. The court suspended imposition of sentence, placed Garritson on formal probation for three years on condition that he spend 365 days in local custody with credit for time served, and ordered him to pay various fines, fees and assessments.

---

[1] The misdemeanor differs from the felony in that the misdemeanor does not require the likelihood of great bodily harm or death to the victim that is required for the felony. (See § 368, subds. (b)(1) & (c); see *People v. Racy* (2007) 148 Cal.App.4th 1327, 1334-1335 (*Racy*).)

5

III.

DISCUSSION

In his initial briefing, Garritson challenges his felony convictions on grounds of insufficient evidence, instructional error, and ineffective assistance of counsel. In supplemental briefing we solicited, Garritson argues he was improperly convicted of dependent adult abuse based on a continuous course of conduct and also based on discrete acts of abuse that were parts of that course of conduct, and he asks us to vacate the convictions based on the discrete acts. Although we reject the challenges raised in Garritson's initial briefing, we do agree that he suffered improper duplicative convictions based on a continuous course of conduct and on discrete acts within that course. As we explain below, however, on this record, where the jury determined five of Garritson's acts each constituted a separate offense, the appropriate remedy is to affirm the convictions for those acts and to vacate the conviction for the continuous course of conduct.

A.   *The Evidence Was Sufficient to Support the Convictions of Felony Dependent Adult Abuse*

Garritson contends his convictions of felony dependent adult abuse on counts 1 and 4 violate his federal constitutional right to due process of law (U.S. Const., 14th Amend., § 1) because the evidence was insufficient to establish his actions were likely to cause Oakley great bodily harm or death. We disagree.

1.   *Standard of Review*

On a due process challenge to the sufficiency of the evidence, the "critical inquiry" is "whether the record evidence could reasonably support a finding of guilt beyond a

6

reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318.) "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Id*. at pp. 318-319.) "Evidence meeting this standard satisfies constitutional due process and reliability concerns." (*People v. Boyer* (2006) 38 Cal.4th 412, 480.)

2.      *Legal Analysis*

As pertinent here, the felony dependent abuse statute prohibits any person who, "under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any . . . dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering." (§ 368, subd. (b)(1).) Under this and similarly worded statutes, courts have held it is for the trier of fact to determine whether the defendant's act was likely to cause great bodily harm or injury. (See, e.g., *People v. Sargent* (1999) 19 Cal.4th 1206, 1223 [§ 273a, felony child abuse]; *Racy*, *supra*, 148 Cal.App.4th at p. 1332 [§ 368, subd. (b)(1)]; *People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066 [§ 245, subd. (a)(4), assault by means of force likely to produce great bodily injury].) No evidence of actual bodily harm or injury is required for conviction; the evidence is sufficient if it supports an inference that "the circumstances or conditions under which defendant inflicted physical pain or mental suffering were likely to produce great bodily harm or death." (*Racy*, at p. 1335; see *People v. Wingo* (1975) 14 Cal.3d

7

169, 176 [since § 245, subd. (a)(4) "focuses on force *likely* to produce harm, it is immaterial that the force actually resulted in no harm whatever"].)

The evidence introduced at trial, taken in the light most favorable to the People, was sufficient to support Garritson's felony convictions on counts 1 and 4. As to count 4, which was based on Garritson's grabbing Oakley by the hair and pulling him to the floor on August 8, 2012, the jury saw surveillance footage depicting that event; and the jury heard testimony from Drs. Modell and Boyd that hair pulling is never appropriate to treat a severely autistic person engaged in self-injurious behavior, would cause pain, and could result in a sprain or fracture of the neck. As to count 1, which was based on the entire course of conduct from July 28 to August 22, 2012, the jury saw surveillance footage in which Garritson poked Oakley's eyes, threw him onto his bed, bent or twisted his arm, kicked him, choked him, and pulled his hair. Dr. Modell and Boyd testified the acts of Garritson depicted in the surveillance footage were inappropriate, would have caused Oakley unnecessary pain, and put Oakley at great risk for an eye infection (Oakley is a MRSA carrier), a sprained wrist or elbow, a dislocated shoulder, or a broken neck. Indeed, the videos caused Dr. Boyd such concern about potential injury that she ordered radiographs to look for bone fractures. Based on this evidence, Oakley's vulnerability, and their own common sense, the jurors reasonably could find that Garritson willfully inflicted unjustifiable pain on Oakley "under circumstances or conditions likely to produce great bodily harm or death," as charged in counts 1 and 4. (§ 368, subd. (b)(1); see *Racy*, *supra*, 148 Cal.App.4th at pp. 1333-1335 [evidence that defendant's conduct could have caused victim to fall and break a bone was sufficient for conviction under

8

§ 368, subd. (b)(1)]; cf. *People v. Clark* (2011) 201 Cal.App.4th 235, 241, 245-246 [evidence that defendant's conduct could have caused eye injury, head injury, broken bones, or torn ligaments was sufficient to establish conduct likely to cause great bodily harm for purposes of felony child abuse]; *People v. Covino* (1980) 100 Cal.App.3d 660, 667-668 [evidence that defendant choked victim was sufficient to support conviction of assault by means of force likely to produce great bodily injury].)

B.      *No Unanimity Instruction Was Required as to Count 1 Because It Was Based on a Continuous Course of Conduct*

Garritson argues his conviction on count 1 must be reversed because the trial court prejudicially erred by failing to give a unanimity instruction sua sponte. (See CALCRIM No. 3500.)[2] We reject this argument.

The constitutional requirement of a unanimous verdict in a criminal case means "the jury must agree unanimously the defendant is guilty of a *specific* crime." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) A trial court ordinarily instructs the jury adequately on unanimity by advising the jury, as the court did here, that all jurors must agree to the verdict on each count. (See CALCRIM Nos. 3515, 3550.) A more specific instruction that the jury must unanimously agree on the particular criminal act underlying a count (CALCRIM No. 3500) is required only when the number of similar, separately chargeable criminal acts shown by the evidence exceeds the number of crimes actually charged in the accusatory pleading. (*People v. Maury* (2003) 30 Cal.4th 342, 422-423;

---

[2]     CALCRIM No. 3500 states in part: "The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

9

*Russo*, at p. 1132; *People v. Sutherland* (1993) 17 Cal.App.4th 602, 611-612.) "The instruction is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed." (*Sutherland*, at p. 612.) A specific unanimity instruction, however, "is not required where the criminal acts are so closely connected that they form a single transaction or where the offense itself consists of a continuous course of conduct." (*People v. Rae* (2002) 102 Cal.App.4th 116, 122.) "Penal Code section 368 may be violated by a continuous course of conduct . . . ." (*Rae*, at p. 123.)

The People charged Garritson in count 1 with felony dependent adult abuse based on the entire course of conduct occurring between July 28 and August 22, 2012. As recounted in part I., *ante*, the People introduced surveillance footage and other evidence that Garritson committed various acts of abuse against Oakley on different dates during that time period. In closing arguments, the prosecutor argued count 1 was based on "a continuing course of conduct of abuse that gave [Oakley] mental suffering and unjustifiable pain, placing him in a position of having great bodily injury." The prosecutor later elaborated:

> "[N]o unanimity is required as to which act accounts for abuse for count 1. So you consider any combination. You could pick an eye poke from July 31st. You could pick both of the arm bending over the headboard. You can pick two eye pokes from another date. You can pick the August 14th. It's whatever you want, and you don't have to agree on it as the 12. You just have to agree that this course of conduct, between [July] 28th and August 22nd, caused [Oakley] unjustifiable pain and mental suffering and placed him where he could likely [suffer] great bodily injury. And it did. So I'm asking you to find [Garritson] guilty."

10

After reviewing some of the surveillance footage with the jury, the prosecutor continued: "So you have various dates to consider for count 1. You have July 31st, August 7th, August 8th, the poke of the eye of August 14th, August 16th, and August 17th. You can consider any combination of acts to find [Garritson] guilty of count 1."

Garritson contends the prosecutor's express reliance on numerous separate acts occurring over a period of weeks as support for a conviction on count 1 shows that those acts did not constitute a continuous course of conduct, and that a unanimity instruction was therefore required. We disagree.

A "continuous course of conduct, by its nature, may stop and start" (*Rae*, *supra*, 102 Cal.App.4th at p. 124), and "proof of a course of conduct offense will usually consist of evidence of various incidents occurring over a period of time" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1451). Where, however, "those incidents can reasonably be found to constitute a course of conduct, and the prosecution charges the crime as a course of conduct, no unanimity instruction is required." (*Ibid.*) "An offense is of a continuing nature when it may be committed by 'a series of acts, which if individually considered, might not amount to a crime, but the cumulative effect is criminal.' " (*People v. Sanchez* (2001) 94 Cal.App.4th 622, 632.) Here, the jury could have found certain of Garritson's acts against Oakley were not likely to produce great bodily harm or death when separately considered (e.g., a single eye poking), but were likely to do so when considered cumulatively (e.g., multiple eye pokings, or arm twisting plus choking). The "jury [was] not required to unanimously agree on one circumstance or condition that was likely to produce great bodily harm or death, but rather, [could] consider all the

11

'circumstances or conditions' that were likely to produce great bodily harm or death."

(*Racy*, *supra*, 148 Cal.App.4th at p. 1334.) Accordingly, no unanimity instruction was required as to count 1. (*Ibid.*; see *People v. Salvato* (1991) 234 Cal.App.3d 872, 882 ["Neither an election nor a unanimity instruction is required when the crime falls within the 'continuous conduct' exception."].)

As further support for our conclusion no unanimity instruction was required, we note that "[b]ecause the language of . . . section 368, subdivision (b)(1) . . . derives from the felony child abuse statute, . . . section 273a, it is appropriate to review the decisions interpreting section 273a in our analysis of section 368, subdivision (b)(1)." (*Rae*, *supra*, 102 Cal.App.4th at p. 122.) With regard to section 273a, the Court of Appeal has held:

> "Although the child abuse statute may be violated by a single act [citation], more commonly it covers repetitive or continuous conduct. [Citations.] Here, the information alleged a course of conduct in statutory terms which had occurred between two designated dates. The issue before the jury was whether the accused was guilty of the course of conduct, not whether he had committed a particular act on a particular day. The instruction requiring jury unanimity as to particular acts was inappropriate. Its omission was not error." (*People v. Ewing* (1977) 72 Cal.App.3d 714, 717 (*Ewing*).)

The same analysis and conclusion apply here to the felony dependent adult abuse charged in count 1. "Like child abuse, this is a case where each individual act may not amount to a crime, but the cumulative outcome is criminal. 'It is the continuing course of abuse which leads to prosecution and conviction.' " (*People v. Thompson* (1984) 160 Cal.App.3d 220, 225 [applying continuous course of conduct exception to unanimity instruction requirement in context of spousal abuse under § 273.5].)

12

C.     *Garritson Has Not Shown Ineffective Assistance of Counsel Warranting Reversal*

Garritson also seeks reversal of his convictions on the basis of his trial counsel's failure to object to the prosecutor's misconduct during closing arguments. Garritson complains the prosecutor recounted incidents of abuse as if she were Oakley reporting them to his parents, misstated Dr. Boyd's testimony regarding the likelihood that Oakley could have suffered great bodily harm, and played a video of Oakley interacting with his niece. Garritson further complains his trial counsel's failure to object to this misconduct amounted to constitutionally ineffective assistance. As we shall explain, Garritson has not established ineffective assistance of counsel entitling him to reversal of on direct appeal.

1.     *Additional Background*

The prosecutor began her closing argument by reminding the jury that Oakley was nonverbal and therefore could not tell the jury how Garritson abused him, but that the "surveillance camera spoke volumes for [him]." The prosecutor then assumed the role of Oakley and reported to "Mom and Dad" how Garritson, instead of nurturing and comforting Oakley, repeatedly poked him in the eye, shoved him, put body weight on him, "practically choke[d] [him]," and "took [him] by the back of [his] head and forced [him] to the ground crashing." Based on the video and audio surveillance, the prosecutor argued Garritson "abused [Oakley] repeatedly and gave him unjustifiable pain and made him suffer mentally, and placed him in a position where he could suffer great bodily injury."

13

Later during closing argument, in discussing the various counts of the amended information, the prosecutor played portions of the surveillance footage, described the related testimony of Dr. Boyd, and argued this evidence established conduct by Garritson that was likely to cause Oakley great bodily harm. In particular, the prosecutor played footage of Garritson pushing Oakley onto his bed and applying body pressure to his elbow, and then stated: "[Y]ou heard from Dr. Boyd who looked at that video and said that [Garritson] was likely to produce great bodily injury because of putting body weight on [Oakley's] . . . elbow [that] could have dislocated it, could have fractured [it], . . . could have sprained [it]." The prosecutor next played footage of Garritson twisting Oakley's arm twice, and then stated: "We showed that to Dr. Boyd and she said [Garritson's] actions [were] likely to produce great bodily injury. How? Twisting his arm twice could sprain his wrist, sprain his elbow." Finally, the prosecutor played footage of Garritson placing pressure on Oakley's throat and stated: "Dr. Boyd saw that video and told you by placing body weight to [Oakley's] throat he could have injured his throat. How? By damaging his cartilage. He could have had a hematoma, and he was obstructing his . . . airway, likely to cause great bodily injury."

At the end of her rebuttal argument, the prosecutor played a video of Oakley's young niece interacting with him, which had been shown to the jury during the presentation of evidence. Based on this video, the prosecutor argued that even a toddler could stop Oakley's self-injurious behavior without resorting to violence.

14

2.      *Legal Analysis*

As a threshold matter, Garritson has not preserved any claim of prosecutorial misconduct for our review.  Our Supreme Court has held, repeatedly and recently, that a defendant may not complain on appeal of misconduct by a prosecutor unless the defendant made a timely objection or assignment of misconduct at trial and requested the trial court to admonish the jury to disregard the misconduct.  (E.g., *People v. Montes* (2014) 58 Cal.4th 809, 885; *People v. Jackson* (2014) 58 Cal.4th 724, 763; *People v. Edwards* (2013) 57 Cal.4th 658, 736; *People v. Nunez* (2013) 57 Cal.4th 1, 32; *People v. Williams* (2013) 56 Cal.4th 630, 671-672.)  "The reason for this rule, of course, is that 'the trial court should be given an opportunity to correct the abuse and thus, if possible, prevent by suitable instructions the harmful effect upon the minds of the jury.' "  (*People v. Green* (1980) 27 Cal.3d 1, 27.)  Garritson's trial counsel neither objected to the prosecutor's closing arguments nor asked for a jury admonition regarding those arguments.  "Nothing in the record suggests an objection by [Garritson's] counsel would not have been sustained and followed immediately by an admonition to the jury to disregard the argument or that these remedies would not have cured any prejudice.  Accordingly, a timely objection was required."  (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007 (*Mesa*).)  No objection having been made, however, Garritson forfeited his claim of prosecutorial misconduct.

Garritson attempts to avoid the forfeiture by claiming his trial counsel's failure to object to the prosecutor's closing arguments constituted ineffective assistance warranting reversal.  A criminal defendant has a constitutional right to the effective assistance of

15

counsel at trial.  (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *People v. Bonin* (1989) 47 Cal.3d 808, 833-834.)  On direct appeal, a reviewing court may reverse a conviction for ineffective assistance of counsel only if the record affirmatively discloses no rational tactical purpose for counsel's challenged act or omission.  (*People v. Vines* (2011) 51 Cal.4th 830, 876; *People v. Ray* (1996) 13 Cal.4th 313, 349; *People v. Fosselman* (1983) 33 Cal.3d 572, 581 (*Fosselman*); *Mesa*, *supra*, 144 Cal.App.4th at p. 1007.)  " '[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.' "  (*People v. Salcido* (2008) 44 Cal.4th 93, 172 (*Salcido*).)  This is not one of those rare cases.

Garritson's trial counsel might have had valid tactical reasons for not objecting to the portions of the closing argument during which the prosecutor assumed the role of Oakley and played the video of Oakley's interactions with his niece.  We agree with Garritson the prosecutor's reporting of the abuse to "Mom and Dad" as if she were Oakley and her playing of the video featuring Oakley's niece likely had some appeal to the jurors' sympathy.  But the prosecutor's comments were not unduly prolonged or inflammatory and were solidly grounded in the evidence introduced at trial.  In this emotionally charged case, Garritson's trial counsel reasonably "may have believed that individual objections would have exacerbated the problem by affording the prosecutor an opportunity to elaborate and explain [her] comments."  (*Fosselman*, *supra*, 33 Cal.3d at p. 582; cf. *People v. Benavides* (2005) 35 Cal.4th 69, 106 ["No deficient performance is evident in counsel's tactical decision to refrain from interrupting the emotional testimony of [the victim's] family members with an objection."].)

16

Garritson's trial counsel also might have had valid tactical reasons for not objecting to the prosecutor's statements that Dr. Boyd testified Garritson's acts were likely to cause Oakley great bodily harm. Although Garritson is correct that Dr. Boyd did not explicitly state such harm was "likely," her actual testimony supported that inference. Garritson's trial counsel thus reasonably could have decided that Dr. Boyd's testimony was so harmful that he "did not want to draw additional attention to [the prosecutor's] statements by objecting, having the court rule on the objections, striking [the statements], and having the court give an admonition. Because this would have been a reasonable trial strategy, we cannot find [Garritson's trial] counsel's performance deficient." (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 565 (*Fernandez*).)

In sum, we conclude Garritson's "claim of ineffective assistance of counsel as to prosecutorial misconduct lacks merit." (*Fernandez*, *supra*, 216 Cal.App.4th at p. 565; see *Salcido*, *supra*, 44 Cal.4th at p. 172 [no ineffective assistance when "defense counsel had valid tactical reasons for not objecting to, and not asking the trial court to tell the jury to disregard, the prosecutor's arguments"]; *People v. Ghent* (1987) 43 Cal.3d 739, 773 ["Counsel may well have tactically assumed that an objection or request for admonition would simply draw closer attention to the prosecutor's isolated comments."].)

D. *Garritson Was Improperly Convicted of Dependent Adult Abuse Based on a Continuous Course of Conduct and Also Based on Discrete Acts Within That Course*

We solicited supplemental briefs from the parties on the propriety of convicting Garritson on count 1, based on a continuous course of abuse, and also convicting him on counts 2 through 6, based on discrete acts of abuse that were part of the continuous

17

course underlying the conviction on count 1. In their supplemental briefs, the parties agree such duplicative convictions are improper. The parties disagree, however, on the appropriate appellate remedy. Garritson contends we should vacate the convictions on counts 2 through 6, and affirm only the conviction on count 1, provided we conclude, as we have, that sufficient evidence supports that conviction. The People contend we should vacate the conviction on count 1 and affirm the convictions on counts 2 through 6. We agree with the People.

To resolve the parties' dispute about the appropriate remedy, we turn to section 954, which "sets forth the general rule that defendants may be charged with and convicted of multiple offenses based on a single act or an indivisible course of conduct." (*People v. Lofink* (1988) 206 Cal.App.3d 161, 166.) "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense . . . , under separate counts . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . ." (§ 954.) Section 954 thus "permits the charging of the same offense on alternative legal theories, so that a prosecutor in doubt need not decide at the outset what particular crime can be proved by evidence not yet presented." (*People v. Ryan* (2006) 138 Cal.App.4th 360, 368 (*Ryan*).) Further, the People may obtain multiple convictions based on a single criminal act or an indivisible course of conduct if the charges allege separate offenses that are not greater and lesser included offenses. (*People v. Benavides* (2005) 35 Cal.4th 69, 97; *Ryan*, at p. 368.)

Multiple convictions based on a single criminal act are prohibited, however, when the counts of an accusatory pleading merely charge the same crime under different legal theories. For example, only one conviction of rape was proper when the defendant forcibly engaged in a single act of sexual intercourse with a minor, even though the defendant was charged with, and found guilty of, one count of forcible rape and one count of statutory rape. (*People v. Craig* (1941) 17 Cal.2d 453, 454-455 (*Craig*).) Similarly, only one conviction of murder was permissible when there was only one killing, even though the information charged two counts of felony murder and one count of second degree murder and the jury returned guilty verdicts on all three counts. (*People v. Coyle* (2009) 178 Cal.App.4th 209, 211, 217-218 (*Coyle*).) Other cases have also held that only one conviction of a crime could be sustained when a single act violated multiple subdivisions of a statute which simply defined different ways of committing the crime. (*People v. Muhammad* (2007) 157 Cal.App.4th 484, 486, 494 [stalking]; *Ryan*, *supra*, 138 Cal.App.4th at p. 369 [forgery].) Thus, "[w]hen a single act relates to but one victim, and violates but one statute, it cannot be transformed into multiple offenses by separately charging violations of different parts of the statute." (*People v. Tenney* (1958) 162 Cal.App.2d 458, 461.)

As in the above cases, the People charged Garritson with multiple violations of a single statute based on different legal theories. Count 1 alleged felony dependent adult abuse (§ 368, subd. (b)(1)) based on a continuous course of conduct between July 28 and August 22, 2012; counts 2 through 6 alleged the same offense based on individual acts that occurred on different dates within the same time period. The jury returned guilty

19

verdicts on all of these counts, albeit for the lesser included misdemeanor offense (§ 368, subd. (c)) on counts 2, 3, 5, and 6. In effect, then, Garritson suffered one conviction under section 368, subdivision (b)(1) or (c) for each discrete act, plus another conviction under section 368, subdivision (b)(1) for the same acts considered in the aggregate. Such duplicative convictions are improper, and either the conviction on count 1 or the convictions on counts 2 through 6 must be vacated. (§ 954; *Coyle*, *supra*, 178 Cal.App.4th at pp. 217-218; *Ryan*, *supra*, 138 Cal.App.4th at p. 371.)

In choosing between these alternative remedies, we note the propriety of multiple convictions is "reviewed de novo, as it turns on the interpretation of section 954" (*People v. Villegas* (2012) 205 Cal.App.4th 642, 646), and "whether a series of wrongful acts constitutes a single or multiple offense must in the last analysis be determined by the peculiar facts and circumstances of each individual case" (*People v. Stanford* (1940) 16 Cal.2d 247, 251). Other appellate courts have applied these rules in considering challenges to multiple convictions based on the same or related acts, albeit without always expressly so stating. For example, the *Stanford* court upheld multiple convictions of theft from the same victim when the evidence "established clearly the commission of separate offenses by distinct appropriations of different sums of money on separate occasions." (*Ibid.*) On the other hand, the Supreme Court consolidated separate convictions for forcible and statutory rape based on one act of sexual intercourse into one conviction indicating the rape was committed both with force and against a minor. (*Craig*, *supra*, 17 Cal.2d at p. 459.) Similarly, the Court of Appeal vacated two of three

20

murder convictions based on one killing, but incorporated into the judgment the jury's special circumstances finding on all convictions. (*Coyle*, *supra*, 178 Cal.App.4th at p. 218.) Finally, the *Ryan* court affirmed the convictions under the subdivision of the forgery statute that "more completely covered" the defendant's conduct and vacated the duplicative convictions under another subdivision. (*Ryan*, *supra*, 138 Cal.App.4th at p. 371.) The pattern discernible from these cases is that the courts upheld the convictions and findings that most accurately reflected the evidence introduced at trial and the jury's assessment of the defendant's culpability, and vacated any that were duplicative.

Here, the evidence showed that on separate days over the course of several weeks, Garritson repeatedly poked Oakley's eyes, twisted his arm or bent it over the headboard of a bed, pulled him to the floor by his hair, and committed other acts of abuse against Oakley. Considering these acts separately, the jury returned verdicts against Garritson indicating various levels of culpability: guilty of one felony violation of the dependent adult abuse statute (count 4), guilty of four misdemeanor violations (counts 2, 3, 5 & 6), and not guilty of one alleged felony violation (count 7). The jury also found Garritson guilty of one felony violation of the statute based on the same acts when considered as a continuous course of conduct (count 1). Garritson has not challenged the sufficiency of the evidence to support his misdemeanor convictions, and we determined in part III.A., *ante*, that the evidence was sufficient to sustain his felony convictions. In light of the evidence introduced at trial and the jury's careful consideration of that evidence as indicated by its mixed verdicts, we deem it appropriate to affirm the convictions on

21

counts 2 through 6 as accurately reflecting the jury's assessment of Garritson's criminal culpability, and to vacate as duplicative the conviction on count 1.

Garritson urges us instead to affirm the conviction on count 1 and to vacate all of the other convictions. In support of this remedy, he relies on the following three-step argument: (1) "When a criminal statute punishes a course of conduct, the prosecution may not divide that course up into multiple counts of the offense; the entire continuous course constitutes only a single violation of the statute." (*People v. Avina* (1993) 14 Cal.App.4th 1303, 1311 (*Avina*)). (2) "[S]ection 368 may be violated by a continuous course of conduct." (*Rae*, *supra*, 102 Cal.App.4th at p. 123.) (3) Therefore, a "defendant may be charged with only one count of continuous [dependent adult] abuse unless multiple victims are involved." (*People v. Johnson* (2002) 28 Cal.4th 240, 243 (*Johnson*)). We are not persuaded.

The principal flaw in Garritson's argument is that it relies on cases applying a statute that is substantially different from section 368. *Avina* and *Johnson* considered section 288.5, which defines the offense of "continuous sexual abuse of a child" as the commission, by someone residing with or having recurrent access to the child, of three or more acts of substantial sexual conduct or lewd and lascivious conduct with the child over a period of at least three months. (*Id.*, subd. (a).) Section 368, however, does not define dependent adult abuse in terms of a continuous course of conduct. "The statute may be applied to a wide range of abusive situations, including within its scope active, assaultive conduct, as well as passive forms of abuse, such as extreme neglect." (*People v. Heitzman* (1994) 9 Cal.4th 189, 197.) Active, assaultive conduct typically occurs by

22

discrete acts (e.g., punching a victim in the face and breaking his jaw), whereas neglect typically occurs by a course of conduct that gradually produces harm (e.g., refusing to provide water for several days and causing dehydration). Thus, section 368, like the felony child abuse statute upon which it is based, may be violated by either discrete acts or a continuous course of conduct. (*Rae*, *supra*, 102 Cal.App.4th at p. 123; see *People v. Napoles* (2002) 104 Cal.App.4th 108, 116; *Ewing*, *supra*, 72 Cal.App.3d at p. 717.) Moreover, section 288.5 expressly prohibits charging a defendant under that statute and also charging him in separate counts with the individual offenses that make up the continuous sexual abuse, unless the other offenses occurred outside the time period of the section 288.5 offense or are charged in the alternative. (*Id.*, subd. (c).) "In explicitly requiring that continuous sexual abuse and specific sexual offenses be charged in the alternative, section 288.5 essentially carves out an exception to section 954's general rule permitting joinder of related charges." (*Johnson*, *supra*, 28 Cal.4th at p. 246.) Section 368, however, contains no such carve-out, so that joinder of a count alleging a continuous course of conduct under section 368 with counts alleging discrete acts under that statute is permissible under section 954. Accordingly, the quotations from *Avina* and *Johnson* on which Garritson relies do not apply to charges under section 368.

Although the cases involving section 288.5 cited by Garritson are not directly on point, we note the approach taken in cases remedying improper multiple convictions under that statute is consistent with the approach we have taken here. In *Johnson*, our Supreme Court adopted the Court of Appeal's reasoning that "if an accusatory pleading is improper (i.e., a count alleging violation of section 288.5 is joined, and *not*—as

23

subdivision (c) requires—charged alternatively, with one or more counts alleging specific sexual offenses), then the multiple convictions predicated thereon cannot stand, and either the continuous abuse conviction or the convictions on the specific offenses must be vacated." (*Johnson*, *supra*, 28 Cal.4th at p. 245.)  Although the Supreme Court affirmed the Court of Appeal's judgment reversing the convictions on the specific offenses, it did not mandate that remedy in all cases or explain why it was appropriate in that case, apparently because the choice-of-remedy question was not at issue.  (*Id.* at p. 248.)  Four months after *Johnson* was decided, the Court of Appeal held it was "appropriate, in deciding which convictions to vacate as the remedy for a violation of the proscription against multiple convictions set forth in section 288.5, subdivision (c), that we leave appellant standing convicted of the alternative offenses that are most commensurate with his culpability." (*People v. Torres* (2002) 102 Cal.App.4th 1053, 1059.)  Sometimes that will require vacating the conviction under section 288.5 (*id.* at pp. 1059-1061), and other times it will require vacating the convictions of the improperly joined offenses (*People v. Bautista* (2005) 129 Cal.App.4th 1431, 1436-1438).  As we have explained (see pp. 20-22, *ante*), vacating Garritson's conviction on count 1 and affirming his other convictions is "most commensurate with his culpability." (*Torres*, at p. 1059.)

Finally, our vacatur of the conviction on count 1 requires reductions in two assessments the trial court levied when it granted Garritson probation.  The court operations assessment of $40 per conviction must be reduced from $240 to $200 (§ 1465.8, subd. (a)(1)), and the court facilities assessment of $30 per conviction must be reduced from $180 to $150 (Gov. Code, § 70373, subd. (a)(1)).

DISPOSITION

The conviction on count 1 is vacated. The total court operations assessment under section 1465.8 is reduced to $200, and the total court facilities assessment under Government Code section 70373 is reduced to $150. In all other respects, the order suspending imposition of sentence and granting probation is affirmed.


                                                                                    IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McDONALD, J.