Filed 12/16/20  P. v. Oliva CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARIO RAMOS OLIVA,<br><br>    Defendant and Appellant. | B302253<br><br>(Los Angeles County<br>Super. Ct. No. BA476819) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jaime L. Fuster and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Mario Ramos Oliva was convicted of two counts of possession for sale of methamphetamine that arose out of two separate encounters with the police, and was sentenced to a county jail term of 16 months on the first count and a concurrent jail term of the same duration on the second count. To establish liability on the first count, the People introduced into evidence a forensic report indicating that the substance recovered from Oliva contained methamphetamine. Although the criminalist who authored the report did not testify at trial, Oliva did not object to the admission of the report, nor did he object to another criminalist's testimony discussing this report.

On appeal, Oliva seeks an order reversing the conviction on the first count of possession for sale of methamphetamine on the ground that the People violated his Sixth Amendment right to confrontation by presenting evidence of the report without calling its author as a witness at trial. Oliva further argues that to the extent he forfeited this claim of error, we should still consider Oliva's confrontation clause claim because his trial attorney's failure to object to this evidence constituted ineffective assistance of counsel.

We reject Oliva's arguments. First, we conclude that Oliva forfeited his confrontation clause claim by failing to raise it below. Second, Oliva is not entitled to relief on his ineffective assistance claim because he fails to establish that, without the benefit of the nontestifying criminalist's forensic analysis, there is a reasonable probability the jury would not have found that Oliva possessed methamphetamine for the purpose of the first count of possession of this controlled substance for sale. We thus affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize only those facts that are relevant to this appeal.

On June 14, 2019, the People filed an information charging Oliva with two counts of possession for sale of a controlled substance (methamphetamine) in violation of Health and Safety Code section 11378. Count 1 alleged that Oliva perpetrated this offense on or about April 7, 2019, and count 2 alleged he committed this offense on or about May 13, 2019. Oliva pleaded not guilty to both counts.

At trial, the People offered evidence suggesting that on two separate occasions, Oliva possessed several grams of methamphetamine.[1]

On April 7, 2019, Officer John Padilla of the Los Angeles Police Department (LAPD) responded to a call at a location at 43rd Place regarding a prowler. There were four sheds on that property, one of which was being rented by Oliva. After Officer Padilla arrived at the premises, Oliva exited his shed. Officer Padilla then asked Oliva if he had any drugs on him, and Oliva replied that he did not.

After receiving consent from Oliva to search his person, Officer Padilla recovered from Oliva's pants pocket a plastic bag containing a large amount of clear crystal-like substance resembling methamphetamine. The substance was broken into pieces and weighed 5.48 grams with packaging and 4.88 grams without packaging. Oliva stated that the substance belonged to a friend. Officers thereafter searched Oliva's shed, and recovered

---

[1] The next five paragraphs summarize evidence the People presented at trial.

four glass pipes from a table inside the structure, each of which contained a white substance resembling methamphetamine.

On May 13, 2019, the police returned to the location at 43rd Place and arrested Oliva on an outstanding warrant. On a table located inside Oliva's shed, the police discovered pipes with white residue on them, a scale with white residue thereon, several prepackaged bags of suspected narcotics, an unpackaged substance the police suspected was methamphetamine, a clear piece of plastic containing what the police also suspected was methamphetamine that weighed 4.39 grams, a straw with white residue on it, and 47 empty bags that were identical to the bags that contained the suspected methamphetamine. These items were recovered from the side of the table at which Oliva had been sitting before he was apprehended.

At trial, LAPD criminalist Milena Srbova provided testimony regarding the chemical composition of the items seized from Oliva. Using a Fourier-transform infrared spectroscopy (FTIR) test, Srbova analyzed the white crystalline material contained within a plastic bindle that police had recovered from Oliva on May 13, 2019. Srbova testified the test revealed that this substance contained methamphetamine.

Although Srbova did not personally analyze the contents of the plastic bindle that police seized from Oliva on April 7, 2019, she did authenticate a forensic report relating thereto that was authored by Srbova's coworker, Kevin Hollomon. The report indicates that on April 9, 2019, Hollomon used the FTIR test to analyze the 4.88-gram crystalline material found within the bindle, and concluded that it contained methamphetamine. The report includes the following text: "I, the undersigned analyst, as a Criminalist employed by the Los Angeles Police Department,

am prepared to testify to the information provided in this report," and was signed by Hollomon, technical reviewer A. Mazzola, and administrative reviewer W. Tsega. Oliva's trial counsel did not object to the admission of the forensic report or Srbova's testimony relating thereto.

At trial, Oliva testified in his own defense. Oliva claimed that in April and May 2019, he had supported himself with disability checks and his wife contributed to the family's income. Oliva insisted that he did not sell drugs.

Oliva asserted that on April 7, 2019, a male acquaintance (Jairo) and a female acquaintance (Leslie) accompanied him to the shed so that he could show them a tool that he intended to sell to them. According to Oliva, he "believe[d]" that the bag the police found in his pants pocket contained methamphetamine. Oliva claimed that when the police arrived, Leslie gave this bag to him and Oliva "put it on" him because he did not think the police would search his person. Oliva further asserted that before the police arrived, Leslie told him that she had some methamphetamine on her.[2] Oliva also testified that the four

[2] Although Oliva's trial testimony was not altogether clear, it appears he was claiming that Leslie: (1) gave Oliva the clear crystal-like substance resembling methamphetamine that the police found on him on April 7, 2019, and (2) told Oliva that this substance was methamphetamine before she gave it to him. For instance, Oliva testified that on April 7, 2019, he "told [the police] that the young lady . . . had given the drugs to [him]." Oliva's appellate counsel has adopted this interpretation of Oliva's trial testimony as well. According to Oliva's opening brief, he testified that "[t]he woman who was visiting gave [Oliva] the bag, which he believed contained methamphetamine, that police found in his pocket on April 7," and Oliva "took the suspected

glass pipes the police recovered from the shed belonged to his two visiting acquaintances and certain other persons, but not to him.

Additionally, Oliva claimed that the methamphetamine and narcotics paraphernalia found in his shed on May 13, 2019 did not belong to him; rather, Oliva suggested in his testimony that these items actually belonged to several visitors.

The jury found Oliva guilty of the two counts of possession for sale of a controlled substance (methamphetamine) with which he had been charged. On October 31, 2019, the trial court sentenced Oliva to 16 months' imprisonment in county jail on count 1, and a concurrent term of 16 months' imprisonment in county jail on count 2. Oliva timely appealed the judgment.

## DISCUSSION

### A. Oliva Forfeited His Confrontation Clause Claim

"As a general rule, . . . ' " '[a]n appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court . . . .' " ' [Citation.] ' " 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' [Citation.]" ' [Citation.]" (*People v. Leonard* (2014) 228 Cal.App.4th 465, 481–482 (*Leonard*).)

---

methamphetamine because he did not believe the police would search him but believed that they would search his friend."

Oliva concedes that his "trial counsel failed to object to either Srbova's surrogate testimony regarding Hollomon's conclusion or the introduction into evidence of Hollomon's report." Oliva also concedes that his confrontation clause claim is predicated on appellate cases that were decided prior to his trial in 2019. (Citing *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305; *Bullcoming v. New Mexico* (2011) 564 U.S. 647; *Williams v. Illinois* (2012) 567 U.S. 50; *People v. Dungo* (2012) 55 Cal.4th 608; *People v. Lopez* (2012) 55 Cal.4th 569.)

Under these circumstances, Oliva's failure to raise his confrontation clause objection at trial amounts to a forfeiture of that claim on appeal. (See *People v. Redd* (2010) 48 Cal.4th 691, 730 [holding that a defendant forfeited a confrontation clause claim by failing to raise it at trial]; *Leonard*, *supra*, 228 Cal.App.4th at p. 481 [noting that an appellate claim of error is generally forfeited when the " ' " 'objection *could have been*, but was not, presented to the lower court[,]' " ' " italics added].)

## B.    Oliva's Ineffective Assistance of Counsel Claim Fails

Notwithstanding a defendant's forfeiture of a claim of error, an appellate court may still grant relief if trial counsel's failure to preserve that claim constituted ineffective assistance. (See *People v. Espiritu* (2011) 199 Cal.App.4th 718, 725–726.) " 'An ineffective assistance claim has two components:  A [defendant] must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.' [Citations.]" (See *In re Gay* (2020) 8 Cal.5th 1059, 1073 (*Gay*).)  "To obtain relief, [the defendant] must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a

7

probability sufficient to undermine confidence in the outcome.' " (*Id*. at p. 1086.)

Here, Oliva argues that his trial counsel's failure to object to: (a) Srbova's testimony regarding Hollomon's analysis and (b) the introduction of Hollomon's report constituted deficient performance because "[t]here could be ' "no conceivable tactical purpose" ' for failing to object . . . ." With regard to prejudice, Oliva claims there is a reasonable probability that the jury would not have found that he possessed methamphetamine on April 7, 2019 if his trial counsel had objected on confrontation clause grounds to Hollomon's report and Srbova's testimony relating thereto.

Oliva contends that "Hollomon's report and conclusion were the primary piece [*sic*] of evidence used by the prosecution to support the essential fact that [Oliva] possessed methamphetamine on April 7th," "the fact that police recovered a substance 'resembling methamphetamine' [is not] sufficient to prove that the substance recovered was, indeed, methamphetamine," and evidence that Oliva possessed for sale methamphetamine on other dates could not be offered to show that he had a propensity to do so.

As discussed in more detail below, we reject Oliva's claim of ineffective assistance because he has failed to establish a reasonable probability that if Hollomon's report and Srbova's testimony relating thereto had been excluded, the jury would not have found that Oliva possessed methamphetamine on April 7, 2019.

Officer Padilla testified he had training and experience concerning the packaging and sales of narcotics, the transportation of narcotics, and the symptoms of ingesting

narcotics. Officer Padilla also testified that he received training on "what different types of drugs look like."

Officer Padilla testified that the substance he found in Oliva's pants pocket on that date was a "clear crystal like substance resembling methamphetamine." Officer Padilla also opined that he observed other circumstances indicating that this substance was a narcotic that Oliva possessed for the purpose of sale, including the large amount of the suspected narcotic that Oliva possessed (i.e., 4.88 net grams), the fact that this crystal-like substance was broken up into pieces and thus ready for individual sales, and the fact that Oliva had money on his person even though he admitted to being unemployed. In addition, Officer Padilla testified that the four glass pipes he recovered from Oliva's shed on April 7, 2019 had a white residue that "appear[ed] to be consistent with methamphetamine." Given Officer Padilla's testimony that Oliva had emerged from the shed shortly before the officer found the bag in Oliva's pocket, the presence of white residue on the glass pipes further supports the jury's finding that the substance in the bag was methamphetamine.

At trial, the prosecutor asked Officer Cesar Arambula whether Oliva had made "any admissions to [Officer Arambula] in regard to who owned the methamphetamine that was recovered" on April 7, 2019, and Officer Arambula responded that Oliva stated he "receives it from a friend." Officer Arambula's testimony could be interpreted reasonably to mean that Oliva admitted to possessing methamphetamine on April 7th irrespective of whether his friend gave it to him initially. This interpretation is consistent with Oliva's testimony that on April 7, 2019, he told the police that his female acquaintance

9

(Leslie) "had given the drugs to" him.  Although Oliva's appellate counsel asserts her client merely "admitted that, *at some time*, he sold methamphetamine[, which] does not prove beyond a reasonable doubt that the substance he possessed on *April 7th* was methamphetamine," we adopt the aforementioned construction of Officer Arambula's testimony, as we must, because it is reasonable and it supports the judgment of conviction.  (See *People v. Giordano* (2007) 42 Cal.4th 644, 666 ["On appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]"; 22B Cal.Jur.3d (2017) Criminal Law:  Posttrial Proceedings, § 937 ["[A]ll intendments and presumptions are indulged to support the trial court on matters as to which the record is silent, and error must be affirmatively shown.  This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error," fn. omitted].)

Moreover, as discussed in the Factual and Procedural Background, Oliva testified that on April 7, 2019, Leslie told Oliva she had a bag of methamphetamine, Oliva took the bag from her so that the police would not find it on her, and the police found the bag in Oliva's pants pocket.  (See fn. 2 and its accompanying paragraph, *ante*.)  Oliva does not contend that he would have declined to testify or offered different testimony on this point if evidence of Hollomon's analysis had not been admitted at trial.  These omissions are crucial because Oliva bears the burden of establishing prejudice.  (See *Gay, supra*, 8 Cal.5th at p. 1086.)

10

In fact, Oliva's trial counsel admitted during closing argument that Oliva was "guilty of two counts of simple possession" of methamphetamine, and argued that "even though it wasn't [Oliva's] methamphetamine and he wasn't going to do anything with it, he took it [on April 7, 2019], as he told us, from the woman who was in his garage and he put it in his pocket so that the police wouldn't find it."

In sum, given Padilla's testimony regarding the circumstances of Oliva's arrest and the search of his shed on April 7, 2019 and the admissions Oliva made to the police and at trial, there is no reasonable probability that even if Hollomon's report and Srbova's testimony thereon were excluded, the jury would not have found that the substance recovered from Oliva's person was methamphetamine. (See *U.S. v. Wright* (6th Cir. 1994) 16 F.3d 1429, 1440–1441 ["To our knowledge, no court has held that scientific identification of a substance is an absolute prerequisite to conviction for a drug-related offense, and we too are unwilling to announce such a rule. . . . . So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable."].)

Because Oliva has not demonstrated that he suffered prejudice from trial counsel's alleged deficient performance, his claim of ineffective assistance fails. (See *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008 ["In considering a claim of ineffective assistance of counsel, it is not necessary to determine ' "whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness

11

claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." ' "].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                                    BENDIX, J.


We concur:


        ROTHSCHILD, P. J.


        FEDERMAN, J.*

---

&ast; Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.