Filed 12/31/20 P. v. Cervantes CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B298509 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. GA102221 |
| v. | |
| DIEGO CERVANTES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jared D. Moses, Judge. Affirmed.

Mark S. Givens, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant Diego Cervantes, a janitorial supervisor at a shopping mall, was convicted of sexually abusing several women who worked as janitors at the mall. On appeal, he argues that there is insufficient evidence of unlawful restraint to support his sexual battery conviction and that the prosecutor committed prejudicial misconduct by misstating the quantum of proof required before the jury could use the charged crimes as propensity evidence for other charged crimes. We affirm.

# PROCEDURAL BACKGROUND

By second amended information filed March 25, 2019, defendant was charged with two counts of rape (Pen. Code,[1] § 261, subd. (a)(2); counts 1 & 5); one count of sexual penetration by object (§ 289, subd. (a)(1)(A); count 2); two counts of forcible oral copulation (§ 288a, subd. (c)(2)(A); counts 3 & 7); two counts of false imprisonment by violence (§ 236; counts 4 & 6); and two counts of sexual battery by restraint (§ 243.4, subd. (d); counts 8 & 9).[2] As to counts 1, 2, 3, 5, and 7, the information alleged defendant committed the offenses against multiple victims (§ 667.61, subds. (b) & (e)). Defendant pled not guilty and denied the allegation.

After a jury trial at which he testified in his own defense, defendant was convicted of counts 1–4, 6–7, and 9. The jury found

---

[1] All undesignated statutory references are to the Penal Code.

[2] The information was amended during trial to conform to proof by changing the sexual battery charge in counts 8 and 9 from section 234.4, subdivision (a) to subdivision (d) and to correct a clerical error. The original information was filed on September 7, 2018.

the multiple-victim allegation true. For count 5, the jury found defendant not guilty of rape but guilty of the lesser-included offense of attempted rape. The jury acquitted defendant of count 8.

The court denied defendant's motion for a new trial and sentenced him to an aggregate term of 64 years to life. For counts 1, 2, 3, and 7, the court imposed four consecutive indeterminate terms of 15 years to life under the One Strike law (§ 667.61). The court imposed four years for the determinate term—the mid-term of three years for count 5 plus one year for count 9 (one-third the midterm of three years), to run consecutively. The court stayed the sentences for counts 4 and 6 under section 654.

Defendant filed a timely notice of appeal.

## FACTUAL BACKGROUND

Defendant, a janitorial supervisor at a shopping mall, was convicted of eight counts of sexual misconduct against three women who worked as janitors at the mall. Nevertheless, we limit our factual discussion to the facts underlying count 9, the sexual battery of Maria Guadalupe O.D.F., which, based on our resolution of defendant's prosecutorial misconduct claim, is the sole count relevant to this appeal.

In March 2013, Maria Guadalupe was working as a cleaner at a local mall when defendant was brought on as her supervisor. During his first few weeks on the job, defendant invited Maria Guadalupe to have lunch with him outside of work. She always declined, however, and defendant eventually stopped asking. During the next three months, defendant periodically pinched Maria Guadalupe's ribs while he joked around with her.

Sometime that summer, defendant called Maria Guadalupe into the storage room that served as his office. Defendant

grabbed her from behind and began massaging her shoulders; he told her to relax. Maria Guadalupe could feel defendant's erect penis pressing against her back. She pulled away and fled the room without getting the supplies she had come for.

That December, Maria Guadalupe had another inappropriate run-in with defendant. As she entered a mall restroom to clean it, defendant followed her. Again, defendant grabbed her shoulders from behind, massaged them, and told her to relax; again, Maria Guadalupe could feel defendant's erect penis pressing against her; again, she fled the area.

Six months later, in June 2014, it happened again. Defendant called Maria Guadalupe into his office to get some cleaning products. When she arrived, he grabbed her from behind, massaged her shoulders, and pressed his body against hers. Maria Guadalupe struggled to get away.

Maria Guadalupe never had the courage to confront defendant about his behavior. Although she told some coworkers and a union delegate about what had happened, she did not tell anyone in management; she was afraid they wouldn't believe her. Maria Guadalupe had heard about coworkers who had reported being sexually harassed by managers; the complaints were not well-received. Moreover, the union delegate told her that she had to have video footage and witnesses to corroborate her claim; Maria Guadalupe didn't have that kind of evidence.

Sometime in 2014 or 2015, defendant was promoted to district manager at the company contracted to clean the mall. But in September 2015, he returned to the mall where Maria Guadalupe worked for a site visit. Defendant told her to clean a vacant café; he claimed the mall wanted to show it to prospective tenants. He also said one of her male colleagues would meet her

4

there to help her. The colleague never showed up; defendant arrived instead. No one else was there.

As Maria Guadalupe began to clean the vacant café, defendant approached her from behind and grabbed her shoulders as he had in the past. But this time, he was more forceful—and this time, he grabbed her hand, forced it behind her back, and pressed it against his erect penis, which she could feel through his pants. As Maria Guadalupe struggled to get away, defendant held her more tightly, forcing her to "caress his legs and the groin" with her hand. Maria Guadalupe eventually broke free and resumed cleaning.

They soon left the café, but Maria Guadalupe "was very scared" and "didn't have the courage to confront him." Nor did Maria Guadalupe have the courage to report defendant to management: She was afraid she'd lose her job if they didn't believe her. And indeed, the next time defendant saw Maria Guadalupe, he tried to get her disciplined at work.

## DISCUSSION

Defendant contends there is insufficient evidence to support the unlawful restraint element of count 9 because the prosecution did not prove that he used more force than necessary to commit the sexual battery. He also argues that the prosecutor committed prejudicial misconduct by misstating the quantum of proof required before the jury could use the charged sex crimes as propensity evidence of other charged sex crimes under Evidence Code section 1108.

## 1. There is sufficient evidence of unlawful restraint to support defendant's conviction for count 9.

A criminal defendant may not be convicted of any crime unless the prosecution proves every fact necessary for conviction beyond a reasonable doubt. (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, §§ 7, 15; *In re Winship* (1970) 397 U.S. 358, 364; *People v. Tenner* (1993) 6 Cal.4th 559, 566.) "This cardinal principle of criminal jurisprudence" (*Tenner*, at p. 566) is so fundamental to the American system of justice that criminal defendants are always "afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." (*United States v. Powell* (1984) 469 U.S. 57, 67.)

Defendant contends there is insufficient evidence of unlawful restraint to support his conviction for sexual battery of Maria Guadalupe. We disagree. We conclude there is substantial evidence from which a jury could reasonably infer that defendant used his authority to compel Maria Guadalupe to stay in a room in which she did not wish to remain, and that compulsion was sufficient to constitute unlawful restraint.

### 1.1. Standard of Review

In assessing the sufficiency of the evidence to support a conviction, we review the entire record to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60.) "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find

6

the defendant guilty beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We may not reweigh the evidence or resolve evidentiary conflicts. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) The same standard applies where the conviction rests primarily on circumstantial evidence. (*People v. Thompson* (2010) 49 Cal.4th 79, 113.)

Deference is not abdication, however, and substantial evidence is not synonymous with *any* evidence. (*People v. Johnson* (1980) 26 Cal.3d 557, 576–577.) " 'A decision supported by a mere scintilla of evidence need not be affirmed on appeal.' [Citation.] Although substantial evidence may consist of inferences, those inferences must be products of logic and reason and must be based on the evidence." (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) Likewise, we "may not … ' "go beyond inference and into the realm of speculation in order to find support for a judgment." ' " (*People v. Franklin* (2016) 248 Cal.App.4th 938, 947; accord *People v. Waidla* (2000) 22 Cal.4th 690, 735.)

### 1.2. Elements of Sexual Battery by Restraint

To convict defendant of count 9, the prosecution was required to prove:

- ◦ Defendant unlawfully restrained Maria Guadalupe;

7

- While Maria Guadalupe was restrained, defendant caused her to touch an intimate part of defendant;

- The touching was against Maria Guadalupe's will; and

- The touching was done for the specific purpose of sexual arousal, sexual gratification, or sexual abuse.

(§ 243.4, subd. (d); see CALCRIM No. 935.)

Unlawful restraint requires "something more than the exertion of physical effort required to commit the prohibited sexual act." (*People v. Pahl* (1991) 226 Cal.App.3d 1651, 1661.) But it doesn't necessarily require physical force. A victim is *unlawfully restrained* within the meaning of section 243.4 when his or her liberty is controlled by the words, acts, or authority of another, and the restraint is against his or her will. (*People v. Arnold* (1992) 6 Cal.App.4th 18, 28 (*Arnold*).) Put another way, the defendant doesn't have to tie the victim up; it is enough for a defendant to use his authority to coerce a victim to go where she does not wish to go or to remain where she does not wish to remain. (*Id.* at pp. 27–28.)

### 1.3. There is substantial evidence defendant unlawfully restrained Maria Guadalupe.

To be sure, "a restraint is not unlawful if it is accomplished by lawful authority and for a lawful purpose … ." (*Arnold*, *supra*, 6 Cal.App.4th at p. 28; *People v. Alford* (1991) 235 Cal.App.3d 799, 802–804.) And in this case, it was within the scope of defendant's duties to tell Maria Guadalupe to clean the empty café—even if she didn't want to. But if an otherwise-lawful restraint occurs for an unlawful purpose, it becomes an unlawful

restraint. (*Arnold*, at p. 28; *Alford*, at pp. 803–804.) That is, it would be unlawful for defendant to order Maria Guadalupe to clean the café if he did so to facilitate a sexual battery.

Here, defendant summoned Maria Guadalupe to a vacant café, ostensibly so it could be shown to prospective tenants. But the jury could reasonably infer from defendant's claim that a coworker would join her, the coworker's failure to materialize, defendant's subsequent actions, and the negligible cleaning that was ultimately accomplished, that this was merely a ruse to isolate Maria Guadalupe.

The jury could also reasonably infer Maria Guadalupe was there against her will. The fact that Maria Guadalupe stayed and continued to clean after the battery indicates that she did not feel free to leave. Although she had fled after defendant's previous assaults, Maria Guadalupe had even less power in 2015 than she did during the previous two years. She knew that her coworkers had complained about sexual harassment—and the company not only failed to take responsive action, but instead promoted defendant to district supervisor.

Thus, as in *Arnold*, a "reasonable jury could have concluded that the coercive atmosphere created by defendant was such that [the victim's] liberty was being controlled by defendant's words, acts and authority against her will and that she was unlawfully restrained." (*Arnold*, *supra*, 6 Cal.App.4th at p. 31.) Accordingly, there is substantial evidence to support defendant's conviction for count 9.

2.      **Defendant forfeited his claim of prosecutorial conduct, but counsel was not ineffective for failing to object.**

Under Evidence Code section 1108, when a defendant is charged with a sex crime, a jury may use consider his propensity

9

for committing sex offenses as evidence of his guilt. Before the jury may consider defendant's past sex crimes as propensity evidence to support the current charges, however, the prosecution must prove that the defendant committed them. If the evidence involves an act that isn't charged in the current case, the prosecution must prove its truth by a preponderance of the evidence. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012–1016; *People v. Carpenter* (1997) 15 Cal.4th 312, 382.) If the act is charged in the *current case*, however, the prosecution must prove it beyond a reasonable doubt. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160–1161, 1167–1169.)

Defendant argues that the prosecutor committed prejudicial misconduct by misstating the quantum of proof required before the jury could use the charged sex crimes as propensity evidence of other charged sex crimes under Evidence Code section 1108. Although he concedes this issue has been forfeited by his failure to object below, and further concedes that a timely admonition would probably have cured the harm, he contends defense counsel provided constitutionally defective representation by failing to object. Because counsel may have had a strategic reason not to object, we reject this claim.

### 2.1. Proceedings Below

Using CALJIC No. 2.50.01, the court instructed the jury about the use of charged and uncharged sex crimes as propensity evidence as follows:

> In determining whether the defendant has been proven guilty of any sexual crime of which he is charged, you should consider all relevant evidence, including whether the defendant committed any

10

other sexual crimes, whether charged or uncharged, about which evidence has been received. The crimes charged in Counts 1, 2, 3, 5, 7, 8 and 9 may be considered by you in that regard.

"Sexual offense" means a crime under the laws of a state or of the United States that involves any of the following:

Any conduct made criminal by Penal Code sections 261(a)(2) (rape), 664/261(a)(2) (attempted rape), 289(a)(l)(A) (penetration by foreign object), 288a(c)(2)(A) (unlawful oral copulation), and 243.4(b) (sexual battery by restraint). The elements of these crimes are set forth elsewhere in these instructions.

Evidence of an uncharged sexual offense has been received. If you find by a preponderance of the evidence that the defendant committed an uncharged sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the sexual crime or crimes of which he is accused.

However, even though you find by a preponderance of the evidence that the defendant committed an uncharged sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes you are determining.

If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime that you are determining.

*As to any charged sexual crime*, [i]f you find beyond a reasonable doubt that the defendant committed that crime, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit any other sexual crimes of which he is accused.

(Italics added.) The court then gave the jury two more instructions about the meaning of preponderance of the evidence.[3]

During closing argument, the prosecutor used these principles to explain how the jury should evaluate testimony from Rita C., who testified about an uncharged sexual battery:

If you believe Rita, what do you do with this information?

Well, first of all, *unlike the other cases—or the other charges—where you have to find beyond a reasonable doubt*, with Rita, you just have to find a preponderance of the evidence. Is it more likely than not that what she's telling us is true? If you

---

[3] CALJIC Nos. 2.50.1 and 2.50.2.

find by a preponderance of the evidence that it's more likelier than not that what she's telling us is true, you can infer that the defendant has a disposition to commit sexual offenses.

Essentially what that means is, you can find that he's the kind of person to commit a sexual offense.

And you can infer, if you find that he's the kind of person to commit a sexual crime, if he was likely to commit and did commit the sexual crimes of what he was accused of. You may infer, but you're not required to.

So it's kind of like, well, you know I was— The way you use this information, let's say you were right on the line with one of them, let's say with Estela. You're right on the line with Estela. You think, there's probably he did something, it's right there, but now that I know it happened to Rita, now that I see past behaviors, patterns, yeah, now I believe beyond a reasonable doubt that he is the kind of person that would do this and that he did do this.

*Not only can you use that with Rita's, you can use it with the others. So all of the other crimes*, the crime as to Estela, the crime as to Maria Guadalupe, the crimes as to Esther, Maria Isabel, *you can use this instruction*.

So if you think even, hey, you know, *I believe more likely than not that something happened with Estela*, you can use that to say, well, now I think that he is the kind of person that would do this, that

13

he is the kind of person that secludes women to take advantage of. He is the kind of person to take advantage of who are his subordinates and isolate them and rape them and force them to orally copulate him. *You can use all of the witnesses, all of the victims in this way.*

(Italics added; grammatical errors original.) Defense counsel did not object. Then, after asking the jurors to find defendant guilty, the prosecutor concluded her argument.

Defense counsel began his closing argument by explaining, "Even for seasoned lawyers, some of these instructions are perplexing." He stressed that the jurors would "have a copy of all these jury instructions in the jury room, so you can read them and review them and talk about them." During his argument, however, counsel did not address Rita's testimony or explain how the jury could use propensity evidence.

After the prosecutor's rebuttal argument, the court reread CALJIC No. 2.50.1, which explained that "the prosecution has the burden of proving by a preponderance of the evidence that the defendant committed a crime other than those for which he is on trial." The court then paused to clarify: "And this is the instruction, just so it's clear—I think the prosecutor argued— relates directly to the testimony of Rita C."

### 2.2.    Defendant forfeited this issue by failing to object.

" 'To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument. [Citation.]' [Citation.] A failure to timely object and request an admonition will be excused if doing either

14

would have been futile, or if an admonition would not have cured the harm." (*People v. Linton* (2013) 56 Cal.4th 1146, 1205.) Here, defendant concedes he failed to object to the prosecutor's misstatement and to request an admonition; he also acknowledges that an admonition would probably have cured the harm. As such, the issue is forfeited. Defendant contends, however, that defense counsel's failure to object constituted ineffective assistance of counsel.

### 2.3. On this record, defense counsel did not provide constitutionally defective representation.

Under either the federal or state Constitution, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*Strickland v. Washington* (1984) 466 U.S. 668, 686 (*Strickland*).) To establish ineffective assistance of counsel, defendant must satisfy two requirements. (*Id.* at pp. 690–692.)

First, he must show his attorney's conduct was "outside the wide range of professionally competent assistance." (*Strickland, supra*, 466 U.S. at p. 690.) Then, he must demonstrate that the deficient performance was prejudicial—i.e., there is a reasonable probability that but for counsel's failings, the result of the proceeding would have been different. (*Id.* at p. 694.) "It is not sufficient to show the alleged errors may have had some conceivable effect on the trial's outcome; the defendant must demonstrate a 'reasonable probability' that absent the errors the result would have been different." (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008.)

15

Claims of ineffectiveness must usually be "raised in a petition for writ of habeas corpus [citation], where relevant facts and circumstances not reflected in the record on appeal, such as counsel's reasons for pursuing or not pursuing a particular trial strategy, can be brought to light to inform" the inquiry. (*People v. Snow* (2003) 30 Cal.4th 43, 111.) "There may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal. There may be instances, too, when obvious deficiencies in representation will be addressed by an appellate court *sua sponte*." (*Massaro v. United States* (2003) 538 U.S. 500, 508.) But those cases are rare.

Typically, if "the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation. [Citations.]" (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.) These arguments should instead be raised on collateral review. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

Here, the prosecutor spent comparatively little time discussing propensity evidence—and when she did, her primary focus was on Rita's testimony; her reference to the jury's use of *charged* crimes was fleeting. As such, defense counsel could have reasonably decided that objecting and asking for an admonition would only highlight to the jurors that they could use the charged crimes in this way.

The very structure of the parties' arguments suggests that strategy may have come into play. The prosecutor's misstatement came at the end of her first argument. Then, defense counsel

16

began his response by emphasizing to the jurors that even seasoned lawyers find these instructions confusing and inviting the jurors to read the instructions themselves. Thus, to the extent the jurors noticed the prosecutor's comment, defense counsel alerted them that they should confirm its accuracy. But, if any jurors didn't catch it, defense counsel ensured it wasn't pointed out to them.

Such a strategy is especially plausible given the court's use of CALJIC in this case. As defendant notes, CALJIC Nos. 2.50.01, 2.50.1, and 2.50.2 accurately state the law. But they are wordy, often written in the passive voice, and not, overall, a model of clarity. They also focus on uncharged offenses. Accordingly, defense counsel could have reasoned that the jurors would not focus on the ways in which they could use the charged crimes as propensity evidence of each other—and concluded that if they did, they would have an accurate instruction to guide them. If counsel had objected and requested an admonition, however, he would have ensured that the jury realized they could use charged crimes as propensity evidence of each other.

Because defense counsel had a plausible tactical reason not to object, we conclude defendant has not established that he received constitutionally inadequate representation.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        LAVIN, J.

WE CONCUR:


EDMON, P. J.


DHANIDINA, J.