Filed 6/22/23  P. v. McMillan CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>JOSEPH BRADLEY MCMILLAN,<br><br>        Defendant and Appellant. | F084306<br><br>(Super. Ct. No. 19CR-05452)<br><br>**OPINION** |

-ooOoo-

        APPEAL from a judgment of the Superior Court of Merced County.  Steven K. Slocum, Judge.

        Lillian Hamrick, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kari Ricci Mueller, Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Following a court trial, appellant Joseph Bradley McMillan was convicted of second degree robbery (Pen. Code,[1] § 211); assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)); and resisting an executive officer (§ 69). In addition, the trial court found McMillan had inflicted great bodily injury in the commission of the robbery and the assault. (§ 12022.7, subd. (a).) The court imposed an aggregate term of eight years eight months in state prison.

McMillan raises the following claims on appeal: (1) the trial court failed to consider, based upon the presence of mitigating circumstances, that the low-term presumptive mandate established by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) applies to his sentence; (2) the trial court imposed two great bodily injury enhancements without considering its discretion to strike the enhancements under Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81); and (3) the trial court lacked informed discretion when it imposed the longest prison term possible, unaware of changes made to section 654 by the enactment of Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill 518). Because these legislative enactments were all already in effect at the time of McMillan's sentencing hearing, he further contends that trial counsel rendered ineffective assistance of counsel by failing to raise these issues.

We affirm. Our review of the record does not support McMillan's claims that the trial court failed to exercise its informed discretion at sentencing. We find neither error, nor prejudice assuming error.

## PROCEDURAL HISTORY

On April 26, 2022, the trial court sentenced McMillan to an aggregate term of eight years eight months in state prison. McMillan received the upper term of five years for second degree robbery (§ 211; count 1), plus an additional three years for an

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated.

enhancement alleging the personal infliction of great bodily injury. A consecutive term of eight months was imposed for his conviction for resisting an executive officer (§ 69; count 3). In addition, McMillan was sentenced to the upper term of four years for assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 2), plus an additional three years for a great bodily injury enhancement, stayed pursuant to section 654.

## STATEMENT OF FACTS

On September 22, 2019, L.W. was leaving a liquor store when McMillan approached her and asked her for a cigarette. After L.W. gave McMillan a cigarette, he introduced himself and thanked her. L.W. asked McMillan if he needed a lighter. McMillan replied affirmatively and grabbed a lighter from L.W.'s hand.

L.W. "knew something was coming" as McMillan began yelling that he has no kids, no girlfriend, and "hasn't had any pussy in a long time." McMillan began to strike L.W. in the face with his closed fists. On the third hit, L.W.'s eye split open.

L.W. began to bleed so profusely that she could not see. As she tried to flee, she slipped in her own blood and fell backwards. While on the ground, L.W. used her arms to try to block McMillan's closed-fist hits.

McMillan grabbed L.W.'s hair and slammed her head on the sidewalk. L.W. bit McMillan's arm so that she could escape. McMillan fled with L.W.'s phone, cigarettes, and lighter.

As L.W. staggered away, paramedics and law enforcement arrived. Despite being told that she needed to go to the hospital, L.W. wanted to go home. After paramedics treated L.W., Merced Police Officer Leah Garcia took her home.

Officer Garcia was subsequently notified that a witness had spotted McMillan just a few streets away from where the attack had occurred. McMillan was emitting the odor

of alcohol and he had cuts and scratches on his arms, hands, face, and legs. Officer Garcia detained McMillan with the assistance of other officers.

In transit to the jail, McMillan called Officer Garcia "a fucking spic," and a "wetback." He became increasingly agitated and continued using racial slurs and threatening Officer Garcia.

Just prior to spitting in her face twice, McMillan told Officer Garcia that he wanted to snap her neck and kill her. With the help of another officer, Officer Garcia put a spit mask on McMillan as he continued to spit at her.

McMillan managed to get the spit mask off and continued to spit on Officer Garcia. Approximately six jail staff came to help the officers restrain McMillan by sitting on top of him.

McMillan continued to threaten Officer Garcia as eight people attempted to hold down his legs, arms, and head. Paramedics had to sedate McMillan.

At the jail, L.W. identified McMillan as her assailant. Shortly thereafter, L.W. was treated at the hospital for her injuries.

### The Sentencing Hearing

On April 26, 2022, the trial court sentenced McMillan. The trial court denied probation, finding that the force McMillan applied to L.W. to accomplish the robbery was excessive. The court further found that L.W. was vulnerable in that she was older and frailer than McMillan.

The court found the presence of several factors in aggravation of McMillan's sentence, including: the fact that McMillan's prior convictions were increasingly serious (Cal. Rules of Court, rule 4.421(b)(2)), he was on probation when the offense occurred (rule 4.421(b)(4)), and his prior performance on probation had been unsatisfactory (rule 4.421(b)(5)).

4.

Trial counsel requested imposition of the middle term sentence on count 1, McMillan's conviction for robbery, based upon recent changes made to section 1170. Specifically, newly added subdivision (b)(1) and (2)'s requirement that the middle term be imposed unless aggravating factors are found true beyond a reasonable doubt. Trial counsel identified several factors that supported imposition of a mitigated prison sentence, specifically: McMillan's childhood trauma, including, the death of his parents and the fact that he had been transient since the age of 15; his documented history of mental health issues; and the fact that McMillan's prior convictions were for nonviolent offenses.

The trial court concluded that imposition of the upper term sentence was warranted, explaining that it was chiefly concerned about McMillan's need for mental health treatment and the threat McMillan posed to public safety. The trial court explained:

> "My chief concern is I believe Mr. McMillan needs mental health counseling, and I -- I share the same concerns that the victim in the case has and the People, that Mr. McMillan, he can be very polite, very -- he has been polite to the Court throughout these proceedings. He was polite to [L.W.] when he ask[ed] her for a cigarette. Then he just sort of turned … and became suddenly violent. That's the concern the Court has, because of his mental health condition that has been report[ed] to this Court from, I think, at least two doctors because he had two commitments. The Court's concerned about the safety of the public."

## DISCUSSION

McMillan contends the trial court failed to exercise its informed sentencing discretion in conformity with several recent legislative enactments, all of which went into effect four months prior to his sentencing hearing. The Attorney General contends McMillan forfeited his claims, but that in any event, McMillan can demonstrate neither error nor prejudice.

For the reasons set forth below, we reject McMillan's claim on the merits. We therefore do not address the Attorney General's claim of forfeiture.

## I. Remand is Not Warranted Pursuant to Newly Added Subdivision (b)(6) of Section 1170

McMillan contends the record fails to show the trial court was aware of its statutory obligation to impose the low term as the presumptive sentence based upon the fact that his psychological trauma and mental health issues contributed to the commission of the robbery. (See § 1170, subd. (b)(6).) The low-term presumptive mandate set forth by the enactment of Senate Bill 567 went into effect on January 1, 2022, four months prior to McMillan's sentencing hearing. (Stats. 2021, ch. 731, §§ 1.3, 3(c) (Sen. Bill 567), adding § 1170, subd. (b)(6) by amendment.) For the reasons set forth below, we conclude that remand for a new sentencing hearing is not warranted.

### A. Background: Senate Bill 567

Senate Bill 567 created a presumption that the chosen term of the applicable sentencing triad shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by stipulation, (2) proven to a jury beyond a reasonable doubt, or to the court, if a jury trial is waived, or (3) based on prior convictions evidenced by a certified record of conviction. (Stats. 2021, ch. 731, §§ 1.3, 3(c) (Sen. Bill 567), adding § 1170, subd. (b)(1)-(3).)

As relevant here, Senate Bill 567 also created a presumptive mandate for imposition of the low term sentence where certain mitigating circumstances are present. (Stats. 2021, ch. 731, §§ 1.3, 3(c), adding § 1170, subd. (b)(6).) Where, for example, the defendant's psychological, physical, or childhood trauma was a contributing factor in the commission of the offense, the trial court is required to impose the low term sentence "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).)

6.

**B.      Analysis**

At the sentencing hearing, trial counsel argued for imposition of the middle term rather than the low term sentence. While the parties discussed amended section 1170's requirement that any aggravating facts be found true beyond a reasonable doubt (§ 1170, subd. (b)(2)), trial counsel never specifically referenced subdivision (b)(6)'s low term presumptive mandate. Nonetheless, there is evidence in the record showing that the trial court was aware of its obligation to consider certain mitigating factors enumerated within section 1170, including McMillan's psychological trauma and his mental health issues, and whether these factors contributed to the commission of the offense.

At sentencing, trial counsel argued:

> "If you also look at the factors that are listed in 1170 for mitigating factors, … Mr. McMillan has suffered childhood trauma. Both of his parents died when he was a very young age. It seems he was left to take care of himself by the time he was 15 years old. And then it seems that he's been transient most of the time thereafter.

> "So I would believe his mental health conditions as well as childhood trauma have contributed to the state that Mr. McMillan was in by the time that he committed this crime."

The record therefore supports the conclusion that the trial court was aware of the amendments to section 1170, but it merely failed to make explicit findings on the record that track the statutory language of subdivision (b)(6). While the trial court observed the presence of mitigating factors under subdivision (b)(6) of section 1170, it did not make a finding that these factors "contribut[ed] … in the commission of the offense." (§ 1170, subd. (b)(6).) Nor did the court explicitly state, in imposing the upper term, that "the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (*Ibid.*)

7.

In *People v. Frederickson*, our colleagues in the First District Court of Appeal, Division 5, analyzed a related provision of section 1170, that requires imposition of the low-term sentence if the defendant's youth was a contributing factor in the commission of the commitment offense (see § 1170, subd. (b)(6)(B)). (*People v. Fredrickson* (2023) 90 Cal.App.5th 984.) The appellate court held "the record must 'affirmatively' show compliance with a statutory sentencing mandate whenever the mandate has been 'trigger[ed]' by an 'initial showing' of the applicability of the statute." (*Id.* at p. 991.)

Assuming our colleagues' decision is correct, an ambiguous record would not be sufficient to show that the trial court complied with its statutory obligation.[2] The court must make specific factual findings to that effect.

Although it is unclear whether McMillan's commitment offense was motivated by mental health issues, childhood trauma, the ingestion of alcohol, or some combination thereof, there was enough evidence upon the record to suggest that the low-term presumptive mandate may apply. The trial court did not make a factual finding to this effect. We will therefore presume error by the trial court's failure to make explicit findings relevant to newly added subdivision (b)(6) of section 1170.

Ordinarily, when the trial court is unaware of the scope of its sentencing discretion, or the record is at least ambiguous as to whether the trial court exercised its informed discretion, remand for a new sentencing hearing is appropriate. "When being sentenced, a defendant is entitled to decisions made by a court exercising informed

---

**2**      Subdivision (b)(6) of section 1170 does not require the trial court to make any specific findings in making its sentencing decision. The court is simply required to "set forth on the record the facts and reasons for choosing the sentence imposed," which the trial court here did. (*Id.* at subd. (b)(5).) As we read the statute, the court is not required to make formal findings that track the language of the statute. However, where the trial court fails to do so, the record may lack reasonable assurances that the court exercised its informed discretion at sentencing. It is therefore appropriate to presume error here.

discretion." (*People v. Tirado* (2022) 12 Cal.5th 688, 694.) And, " '[a] court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) We are not persuaded however that resentencing is required upon this record.

Although trial counsel did not argue that imposition of the low term was required or even that it was appropriate, he emphasized that the presence of McMillan's mental health issues and childhood trauma, both mitigating factors under section 1170, supported imposition of the middle term. The trial court appears to have accepted trial counsel's assertion that McMillan's mental health issues contributed to his commission of the commitment offense. In rejecting trial counsel's plea for a reduced sentence, the trial court expressed concern over McMillan's unpredictable and violent nature. The court observed that McMillan was polite to the victim when he asked her for a cigarette but had suddenly become violent. The court remarked, "That's the concern the Court has, because of his mental health condition …. The Court's concerned about the safety of the public."

Although the trial court considered McMillan's childhood trauma and mental health issues, it ultimately concluded that imposition of the upper term sentence on count 1 was warranted based upon public safety concerns. If the trial court declined to impose the middle term sentence despite compelling evidence of McMillan's mental health issues and his childhood trauma, we have no doubt that it would find that imposition of the low term sentence "would be contrary to the interests of justice." (§ 1170, subd. (b)(6).)

Based upon the record, we are confident that remand for a resentencing hearing is not necessary. (See *People v. Flores* (2020) 9 Cal.5th 371, 431-432 [holding remand to

resentence defendant to exercise newly conferred sentencing discretion under statutory amendment would be an idle act, and therefore, unnecessary]; see also, *People v. McVey* (2018) 24 Cal.App.5th 405, 419 [remand was not required "[i]n light of the trial court's express consideration of the factors in aggravation and mitigation, its pointed comments on the record, and its deliberate choice of the highest possible term for the firearm enhancement, there appears no possibility that, if the case were remanded, the trial court would exercise its discretion to strike the enhancement altogether"]; see also, *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896 [concluding that remand for resentencing was not warranted; although the court did not expressly state it would have declined to strike a prior, its statements and rulings support the conclusion that it would not reduce the sentence imposed].) There is no reasonable probability the trial court here would impose the low term sentence upon remand.

McMillan nonetheless asserts that remand for resentencing is required under *People v. Panozo* (2021) 59 Cal.App.5th 825 and *People v. Ochoa* (2020) 53 Cal.App.5th 841. We find both cases distinguishable from the instant case.

In *People v. Panozo,* the record was ambiguous as to whether the trial court understood it had a statutory obligation to consider the defendant's service-related post-traumatic stress disorder as a factor in mitigation at sentencing. (*People v. Panozo*, *supra*, 59 Cal.App.5th at p. 837.) The court never mentioned this factor at sentencing. (*Id*. at p. 838.) The trial court rejected the prosecutor's request to impose the upper term sentence and to impose the sentences on subordinate counts consecutively. Because the trial court had granted some leniency at sentencing, the appellate court was unable to conclude that remand for resentencing would be futile. (*Id*. at p. 839.)

In *People v. Ochoa, supra,* 53 Cal.App.5th 841, the trial court was statutorily obligated to consider "youth-related mitigating factors" (§ 190.5, subd. (b)) at sentencing. The offender, a juvenile, was sentenced to a prison term of life without the possibility of

parole.  (*People v. Ochoa,* at p. 850.)  The record was "at the very least ambiguous as to whether the court understood its [statutory] obligation."  (*Id*. at p. 853.)  Although the court was not required to make specific findings on the record, the court only received information concerning youth-related mitigating factors *after* it had sentenced the juvenile.  The transcripts from the sentencing hearing also suggested the court erroneously believed a statutory amendment had either eliminated or modified the requirement to consider youth-related mitigating factors.  (*Ibid.*)  Thus, there was strong evidence supporting the conclusion that the court did not comply with its statutory obligation under section 190.5.

As distinct from *Panozo* and *Ochoa*, the record here supports the conclusion that remand would be futile.  The court considered McMillan's mental health issues and his childhood trauma which appeared to contribute to the commission of the offense.  It nonetheless rejected trial counsel's request for leniency at sentencing based upon public safety concerns.  Under the circumstances, we are not convinced that the remedy applied in *Panozo* and *Ochoa*—remand for resentencing—is either necessary or warranted here.

## II.     Senate Bill 81

Senate Bill 81 amended section 1385 to require dismissal of eligible enhancements where certain mitigating circumstances are present, "if it is in the furtherance of justice to do so."  (§ 1385, subd. (c)(1).)  As relevant here, several of those circumstances include where the current offense "is connected to mental illness (*id*. at subd. (c)(2)(D)) or "to prior victimization or childhood trauma" (*id*. at subd. (c)(2)(E)).  Amended section 1385 further provides that if "[m]ultiple enhancements are alleged in a single case…all enhancements beyond a single enhancement shall be dismissed" (*id*. at subd. (c)(2)(B)). The presence of any of these circumstances "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger

public safety," which is defined as "a likelihood that …dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

Nothing in the record here supports the conclusion that the trial court failed to comply with its statutory obligation under amended section 1385. Absent evidence to the contrary, we presume that the court considered the presence of mitigating circumstances set forth under amended subdivision 1385, and concluded that striking the great bodily injury enhancements would not be "in the furtherance of justice." (§ 1385, subd. (c)(1); see *People v. Gutierrez, supra,* 58 Cal.4th at p. 1390.) We reject McMillan's claim to the contrary.

## III.    Assembly Bill 518

Assembly Bill 518 amended section 654 to permit an act or omission punishable under two or more provisions of law to "be punished under either of such provisions." (§ 654, subd. (a); Stats. 2021, ch. 441, § 1.) Following Assembly Bill 518's amendment to section 654, the trial court is no longer required to impose the longest possible term of imprisonment when multiple offenses are based on the same act or omission. (See *People v. Mani* (2022) 74 Cal.App.5th 343, 379.) Rather, section 654 vests "the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*People v. Mani,* at p. 379.)

McMillan asserts that "The record does not indicate the trial court was aware that it was no longer required to impose the longest possible prison term." The record does not however demonstrate that the trial court was unaware of the scope of its newfound sentencing discretion under section 654. We therefore presume that it knew the law but elected to impose the greater term of imprisonment in sentencing McMillan. (*People v. Gutierrez, supra,* 58 Cal.4th at p. 1390.) McMillan is not entitled to resentencing on this basis.

12.

**IV.     McMillan Has Failed to Show Ineffective Assistance of Counsel**

In a supplemental brief, McMillan contends that his trial counsel rendered ineffective assistance of counsel by failing to argue that recent legislative enactments applied to his sentence and must be considered. We conclude that McMillan has failed to demonstrate error, or prejudice assuming error.

Here, it is unclear whether the trial court understood its obligation to impose the low-term prison sentence in conformity with newly added section 1170, subdivision (b)(6). Although the trial court considered factors in mitigation of McMillan's sentence, including McMillan's childhood trauma, his documented mental health issues, and his transient status, trial counsel requested that the court impose the middle term, rather than the low-term sentence. The parties did not file sentencing briefs arguing for an aggravated or mitigated term, nor did they explicitly mention newly added subdivision (b)(6) of section 1170 at the sentencing hearing.

Trial counsel may have reasonably anticipated that imposition of the low-term sentence was unlikely, and therefore assumed that the middle term would be a far more reasonable request. Because there was a rational explanation for counsel's failure to argue that the low term prison sentence should be imposed, McMillan cannot demonstrate error. (See *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007 ["[o]n a direct appeal a conviction will be reversed for ineffective assistance of counsel only when the record demonstrates there could have been no rational tactical purpose for counsel's challenged act or omission"].)

Even assuming error, the record does not affirmatively demonstrate prejudice. Section 1170, subdivision (b)(6) requires imposition of the low-term sentence where certain factors contributed to the commission of the offense "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd.

13.

(b)(6).) As discussed, the trial court rejected imposition of the middle term sentence based upon the presence of several aggravating factors, including: McMillan's criminal history, and the increasingly serious nature of his prior convictions; the fact that he was on probation when the robbery was committed; and his unsatisfactory performance on probation. The trial court further explained it was concerned about McMillan's need for mental health treatment, and the threat he posed to the public safety.

Upon this record, it is not reasonably probable that but for trial counsel's failure to argue the low-term presumptive mandate applied (§ 1170, subd. (b)(6)), or any of the other recent legislative enactments identified by McMillan on appeal, the trial court would have imposed a mitigated prison sentence. (*Strickland v. Washington* (1984) 466 U.S. 668, 686-687.) We therefore conclude McMillan has failed to demonstrate ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.

SMITH, J.

WE CONCUR:

LEVY, Acting P. J.

SNAUFFER, J.

14.