Filed 3/30/26  P. v. Seals CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TOI SEALS,<br><br>Defendant and Appellant. | B336917<br><br>(Los Angeles County<br>Super. Ct. No. BA474960) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Blake Armstrong, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

A jury convicted defendant Toi Seals of assault with a firearm, and it found true great bodily injury and firearm enhancements. On appeal, Seals argues his attorney rendered ineffective assistance by failing to request a "no duty to retreat" pinpoint instruction to support his claim of self-defense. As we explain, any omission by counsel did not prejudice Seals because the evidence did not support a no duty to retreat instruction. Accordingly, we affirm Seals's conviction.

# BACKGROUND

One early morning in February 2019, Carlos Guerrero, Robert Jojola, Arlando Martinez, and Carlos Valencia were inside a tent on a sidewalk in Hollywood. Dillion Mahoney and his girlfriend slept in another tent nearby.

Around 5:00 a.m., Seals stopped his car near the tents and began "honking aggressively." Guerrero confronted Seals and asked him to stop honking his car's horn. Seals pulled his car to the curb, with his driver's side window facing the sidewalk. Seals and Guerrero started arguing.

After Mahoney heard Seals say "I'll fuck you up" or "I'll beat your ass" to Guerrero, Mahoney approached Seals and asked him to "take it somewhere else." Seals told Mahoney that he would "fuck [Mahoney] up." Mahoney then slammed his hand on Seals's driver's side window several times trying "to seem intimidating." Seals told Mahoney, "I got something for you," before driving away.

Seals drove to the next intersection, made a U-turn, and stopped his car across the street from the tents. Seals then got out of his car, opened the back door, and retrieved something from the back passenger area of the car before returning to the

driver's seat. Mahoney thought "something bad [was] about to happen," so he grabbed a pair of bolt cutters and stood in front of his tent.

Seals then pulled his car within about a foot from where Mahoney and Guerrero were standing and rolled down the front passenger side window. Before anyone approached his car, Seals raised his right arm and pointed a gun at Guerrero. Mahoney testified that he swung his bolt cutters at the passenger side mirror of Seals's car, knocking part of the mirror off, after Seals pointed his gun at Guerrero but before Seals fired any shots. Another witness testified that Mahoney did not swing his bolt cutters until after Seals fired at, and missed, Guerrero. Immediately after shooting at Guerrero, Seals fired a shot at Mahoney, striking him near his pelvis. Seals then drove away. He was arrested a couple of days later.

The People charged Seals with two counts of attempted premeditated murder (counts 1 and 2) and two counts of assault with a firearm (counts 3 and 4). As to count 3, the People alleged that Seals personally inflicted great bodily injury on Mahoney under Penal Code[1] section 12022.7, subdivision (a), and that he personally used a handgun under section 12022.5, subdivision (a). The People further alleged that Seals suffered a prior serious or violent felony conviction within the meaning of the "Three Strikes" law.

A jury convicted Seals of assault with a firearm on count 3, and it found true the great bodily injury and firearm enhancements for that count. The jury did not reach a verdict on

---

[1] All undesignated statutory references are to the Penal Code.

3

counts 1, 2, or 4.  After Seals admitted the prior strike conviction, the trial court sentenced him to 19 years in prison.

## DISCUSSION

"To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial."  (*People v. Scott* (1997) 15 Cal.4th 1188, 1211 (*Scott*); *Strickland v. Washington* (1984) 466 U.S. 668, 687.)  We defer to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance.  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation."  (*Ibid*.)  Typically, if "the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation."  (*Scott*, at p. 1212.)

Prejudice is shown when there is a reasonable probability that but for counsel's error the result of the proceeding would have been different.  " 'A reasonable probability is [one] sufficient to undermine confidence in the outcome.' "  (*Scott, supra,* 15 Cal.4th at pp. 1211–1212.)  "It is not sufficient to show the alleged errors may have had some conceivable effect on the trial's outcome; the defendant must demonstrate a 'reasonable

4

probability' that absent the errors the result would have been different." (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008.)

A defendant is not guilty of assault if he acts in self-defense. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064.) The defendant must have a reasonable belief that he is in imminent danger of suffering great bodily injury or death and that immediate use of force is necessary to defend against that danger. (*Id*. at pp. 1064–1065.) The defendant must not use more force than is reasonably necessary to defend against the perceived danger. (*Id*. at p. 1065.) A defendant acting in self-defense has no duty to retreat. (*People v. Hatchett* (1942) 56 Cal.App.2d 20, 22.) Instead, the defendant may stand his ground and defend himself when attacked, and he may pursue the attacker until the danger has passed. (*Ibid*.)

Here, the trial court instructed the jury on the principles of self-defense using CALCRIM Nos. 3470 (right to self-defense for non-homicide offenses), 3471 (right to self-defense where there is mutual combat or defendant is the initial aggressor), 3472 (right to self-defense may not be contrived), and 3476 (right to defend real or personal property). Seals's counsel did not request, and the trial court did not provide, optional language included in CALCRIM No. 3470 addressing a defendant's right to stand his ground: "A defendant is not required to retreat. He or she is entitled to stand his or her ground and defend himself or herself and, if reasonably necessary, to pursue an assailant until the danger of (death/bodily injury/[or other crime]) has passed. This is so even if safety could have been achieved by retreating."

Seals argues that his counsel should have requested the optional language from CALCRIM No. 3470 describing his right to stand his ground. Seals claims that language was necessary to

5

explain to the jury that once he confronted Mahoney and Guerrero the second time, he had no duty to retreat before he fired his gun at the two men. As we explain, counsel's failure to request a no duty to retreat instruction was not deficient because the evidence did not support that instruction.

Seals initiated both confrontations with Mahoney and was the first to engage in threatening behavior during each confrontation. During the first confrontation, Seals stopped his car next to where Mahoney, Guerrero, and several other individuals slept in tents. Seals began aggressively honking his horn, causing Guerrero and some of the other individuals to ask Seals to stop. After Seals threatened to assault those individuals, Mahoney asked Seals to be quiet. Seals told Mahoney that he would "fuck [Mahoney] up." Mahoney slammed his fist on Seals's window to intimidate Seals. Seals then drove away. At that point, any potential threat from Mahoney was gone.

Seals voluntarily confronted Mahoney again, when he drove his car back to where Mahoney and Guerrero were standing. Although Mahoney was now holding a pair of bolt cutters, there is no evidence that he immediately approached Seals or immediately engaged in threatening or aggressive behavior toward Seals. Rather, the evidence shows that Seals was the first to act in an aggressive or threatening manner by stopping his car next to where Mahoney and Guerrero were standing and pointing his gun at Guerrero. It was not until after Seals raised his gun that Mahoney swung his bolt cutters at Seals's car.

Seals argues his counsel's failure to request a no duty to retreat instruction was unreasonable because counsel questioned prospective jurors about that instruction during voir dire. But, as

we just explained, the evidence that was presented at trial did not support a no duty to retreat instruction. While counsel may have believed before trial that the instruction would be pertinent to Seals's defense, counsel could have realized after the evidence phase of trial that the instruction was not supported by the evidence. Counsel's failure to request that instruction, therefore, was not deficient.

Seals also argues that the instruction was warranted because the prosecutor argued during closing argument that Seals could have driven away from the scene to avoid further confrontation with Mahoney. Specifically, Seals points to the following portion of the prosecutor's argument, "The defendant had choices. He could have driven off. He could have left. He could have done a U-turn and gone the opposite direction. He could have decided to put the gun away and keep the gun away. There's so many things he could have done." Seals does not cite or discuss, however, what the prosecutor said next: "[Seals] put himself in that situation. Why? Because he had already made up his decision that he was going to shoot at the victims. He made that decision back when he first threatened them and said, I've got something for you. I've got something for you." Considered in context, it is clear that the prosecutor's argument that Seals cites was referring to when Seals first drove away from the scene, before he returned to confront Mahoney and Guerrero with a gun. Indeed, this argument is consistent with the People's theory that Seals instigated both encounters.

In short, the evidence did not support a no duty to retreat instruction. Accordingly, Seals could not have been prejudiced by any omission on his counsel's part to request such an instruction.

**DISPOSITION**

The judgment is affirmed.

VIRAMONTES, J.

WE CONCUR:

WILEY, Acting P. J.

SCHERB, J.

8